[No. 12433.   Department Two.   April 13, 1915.]

JOHN B. FOGARTY, *Administrator, Respondent*, v. NORTHERN
PACIFIC RAILWAY COMPANY, *Appellant*.[1]

APPEAL — DECISION — LAW OF THE CASE.   Where an action for
wrongful death was reversed on appeal merely on the ground of
failure to segregate the damages accruing to various beneficiaries
and an inadequate instruction on the measure of damages, on a sec-
ond appeal on substantially the same evidence, issues as to the pri-
mary negligence of defendant and the contributory negligence of de-
ceased upheld on the first appeal are foreclosed.

APPEAL—EXCEPTIONS—NECESSITY—INSTRUCTIONS.   In the absence
of exceptions to the giving or refusal of instructions, it must be
assumed on appeal that those given correctly stated the applicable
law, and all of it.

DEATH—STATUTES—NEW CAUSE OF ACTION—AMOUNT OF RECOVERY.
The Federal employers' liability act must be construed, like the stat-
ute giving a right of action for wrongful death, as granting a new
and independent cause of action for the benefit of the dependent rela-
tives named in the statute, and the damages recoverable are limited
to the financial loss sustained by their being deprived of a reasonable
expectation of pecuniary benefit by the wrongful death.

DEATH—ABANDONMENT OF WIFE AND CHILD—EFFECT.   The aban-
donment of a wife and child by the husband and father, with the
intention of not supporting them, his ability to do so being shown,
would not deprive them of a right to recover for his wrongful death,
under the provisions of the Federal employers' liability act, since
there was a legal duty on deceased's part to furnish assistance and
support to his wife and child, and the fact of abandonment would be
material only in mitigation of damages.

APPEAL—REVIEW—VERDICT—CONCLUSIVENESS.   Where the evidence
was conflicting, the supreme court on appeal will not set aside the
verdict of the jury, especially after the refusal of the court who
heard the evidence to grant a new trial thereon.

Appeal from a judgment of the superior court for Yakima
county, Grady, J., entered June 17, 1914, upon the verdict
of a jury rendered in favor of the plaintiff, in an action in
tort.   Affirmed.

[1]Reported in 147 Pac. 652.

*Englehart & Rigg*, for appellant.

*William M. Thompson* and *H. J. Snively* (*Charles Del Bondio*, of counsel), for respondent.

ELLIS, J.—This is an action on behalf of the widow and minor child of Frank Edward Myers to recover damages for his death caused by the derailment of an engine hauling an interstate passenger train of the defendant upon which he was working as fireman. It is predicated upon the Federal employers' liability act. The case is here for the second time on appeal. The first trial resulted in a verdict in a lump sum for $20,000, which the trial court reduced to $12,500. The judgment was reversed for failure to segregate the damages accruing to each beneficiary and for an inadequate instruction as to the measure of damages. *Fogarty v. Northern Pac. R. Co.*, 74 Wash. 397, 133 Pac. 609. In conformity with that decision, the complaint was amended by segregating the damages claimed for each beneficiary. The answer tendered the general issue and the affirmative defenses of contributory negligence and prior abandonment of and failure to support his wife and child by the deceased. These defenses were traversed by the reply.

The issues as to the primary negligence of the defendant and the contributory negligence of the deceased are foreclosed by our decision on the first appeal. The evidence touching these questions was substantially the same as that adduced at the first trial.

Touching the defense of abandonment, the evidence shows that the deceased and Sarah E. Myers were married at Leeds, South Dakota, October 28, 1903, and that there was born as the issue of that marriage a daughter, Reva Myers, on October 6, 1904. There is also evidence tending to show that, about five years before his death, the deceased had abandoned his wife and child; that since that time he had contributed practically nothing to their support; that almost continuously since his desertion she had been seeking

him, visiting many railroad centers and division points with a view to reconciliation; that he had told others that he had permanently abandoned his wife and had repudiated his paternity of the child; that neither of the spouses had ever secured a divorce; that the child, since about a year after the abandonment, had resided with the wife's aunt, who was fond of the child and was willing to adopt her; that the abandoned wife had been supporting herself by labor as a domestic; that the deceased was, at the time of his death, a railroad fireman earning $95 to $125 a month, and in a short time would have been eligible to promotion to the position of engineer carrying monthly pay amounting to $150, and that he was a young man twenty-six years of age, intelligent, healthy, attentive to work and of sober and industrious habits. The defendant sought to show that the wife by her conduct had forfeited all right to support by the deceased. There was a sharp conflict of evidence as to her character and conduct. There was testimony tending to show that, subsequent to the desertion, she had led a more or less dissolute life. There was also evidence to the contrary.

The jury returned a verdict for the plaintiff in the sum of $7,000, apportioning $2,500 to the widow and $4,500 to the child. Motions for judgment *non obstante* and for a new trial were overruled. From these orders and the final judgment on the verdict, the defendant appeals.

No exception was taken to the giving of or the refusal to give any instruction, nor is any error assigned thereon. We must assume that the instructions given correctly stated the applicable law and all of it. *Johnson v. Johnson, ante* p. 18, 147 Pac. 649.

The appellant's argument is directed to two contentions, (1) that the undisputed evidence shows that neither the widow nor the minor child had any reasonable expectation of ever receiving any assistance or support from the de-

ceased; (2) that in any event the widow had forfeited all right to any assistance or support.

I. It is now thoroughly settled that the Federal employers' liability act, in its essentials, follows the first English law on the subject, that of 9 and 10 Victoria, known as Lord Campbell's act, and must be construed as that act has been construed, not as a mere continuance of the right of the injured employee in favor of his estate, but as granting a new and independent cause of action for the benefit of the dependent relatives named in the statute, and that the damages recoverable are limited to the financial loss sustained by their being deprived of a reasonable expectation of pecuniary benefit by the wrongful death. *Michigan Cent. R. Co. v. Vreeland*, 227 U. S. 59; *American R. Co. of Porto Rico v. Didricksen*, 227 U. S. 145; *Gulf, C. & S. F. R. Co. v. McGinnis*, 228 U. S. 173.

In its final analysis, the appellant's argument is reduced to the claim that, in case of abandonment, the jury should not be permitted to speculate upon the possibility of a reconciliation. It ignores the legally enforcible liability of a husband and father to support his wife and child to the extent of his reasonable ability. This argument is based mainly upon the case of *Michigan Cent. R. Co. v. Vreeland, supra,* where it is said:

"The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. Compensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings. . . .

"A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the character of the loss of the beneficial plaintiff which is the foundation of the recovery, but also to discriminate between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon

which, in the nature of things, it is not possible to set a pecuniary valuation.' Patterson, Railway Accident Law, § 401.

"Nevertheless, the word as judicially adopted is not so narrow as to exclude damages for the loss of services of the husband, wife, or child, and, when the beneficiary is a child, for the loss of that care, counsel, training and education which it might, under the evidence, have reasonably received from the parent, and which can only be supplied by the service of another for compensation."

This language clearly construes the statute as basing the right of recovery on "some reasonable expectation of pecuniary assistance or support." We do not construe this, however, as meaning that the legal duty of the injured person to support the beneficiary is to be wholly disregarded as a factor in the ground of recovery. While the court there said that this legal liability "is not the sole test," it has not said that it is not one of the tests in a case where it is present. On the contrary, the use of the word "sole" implies that it is one of the tests. The language of the court above quoted was not meant to eliminate any consideration of the legal liability, but to save, as within the benefits of the act, those cases where there is no legal liability but where there is a loss of a prospective benefit, though not one to which the beneficiary is legally entitled. The court, in the *Vreeland* decision, recognizes this distinction as follows:

"The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, 'according as the action is brought for the benefit of the husband, wife, minor child or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled.' Tiffany, Death by Wrongful Act, §§ 158, 160, 161, 162."

If, therefore, in addition to the legal liability, there was shown an earning power and capacity of the deceased, such that, had he lived, the legal right to pecuniary assistance

or support might have been enforced as a thing real and measurable, pecuniarily valuable, then it cannot be said, as a matter of law, that there was no reasonable expectation of such assistance or support, even though it had not theretofore been voluntarily given. Such legal liability accompanied by proof of ability of the deceased to have met the legal duty, also meets the other requisite read into the act by the United States Supreme Court in the *Vreeland* decision in defining "the pecuniary loss and damage" as "one which can be measured by some standard." The legally enforcible liability and the actual ability of the deceased to have met it furnishes a standard of measurement pecuniary in its nature, just as would be furnished by the antecedent voluntary performance of the legal duty. To hold otherwise would be to hold the right to enforce assistance or support by the wife and child a thing of no pecuniary value. This, so far as we are advised, no court has ever held.

The *Vreeland* decision did not eliminate the legal liability as a factor. The whole argument is directed to an elimination of recovery by the surviving spouse for loss of "society and companionship," and "grief and sorrow," or damages as "balm to her feelings," because these things are not capable of measurement by any "material standard." This is the sum and substance of that decision. The judgment was reversed solely because of an instruction that the jury should estimate the financial value to the widow of "care and advice from their own experience as men."

The decision in *American R. Co. of Porto Rico v. Didricksen, supra,* went no further than to apply the same rule as to an instruction allowing a recovery for loss of "care and consideration" claimed by the parents for the death of a son. The court said: "The loss of the society or companionship of a son is a deprivation not to be measured by any money standard." The judgment was reversed on that ground alone.

The decision in *Gulf, C. & S. F. R. Co. v. McGinnis, supra,* follows the rule announced in the other two decisions and holds that a married daughter of the deceased, who was not dependent upon the deceased for support (and who we may note in passing had no legal claim upon him for support), could not recover for his death because she had "no reasonable expectation of any pecuniary benefit as a result of a continuation of his life." This is far from saying that had the deceased been under a legal liability for her support that such legal liability, supplemented by proof of his reasonable ability to supply that support, would not have made a case of loss of "reasonable expectation of pecuniary benefit" on her part.

The three decisions above cited and discussed were made the basis of our decision on the first appeal in this case. The instruction there quoted was held erroneous because it fixed "legal duty independent of pecuniary benefits" as the measure of damages. We did not say, nor did we mean to imply, that the legal duty supplemented by proof of financial ability or earning power, would not furnish a financially measurable criterion of the pecuniary benefits of which the wife and child had reasonable expectation. Obviously that expectation would be reasonable because legally enforcible. Had we then meant to hold otherwise, the case would have been dismissed without remanding for a new trial.

There having been a legal duty on the part of the deceased to furnish assistance and support to the wife and child, and he having been able through his clearly proven earning power to meet that duty, the fact of his abandonment was only material in mitigation of the damages to them occasioned by his death. *Creamer v. Moran Brothers Co.,* 41 Wash. 636, 84 Pac. 592; *Beaumont Traction Co. v. Dilworth* (Tex. Civ. App.), 94 S. W. 352, 357; *Wood v. Philadelphia, B. & W. R. Co.* (Del. Sup'r Ct.), 76 Atl. 613, 617. But it is not contended that the damages awarded are excessive if any damages are recoverable.

At least one Federal court has held that evidence of a separation short of a decree of divorce, either *a mensa* or *a vinculo*, is no bar to a recovery under the Federal employers' liability act. *Dunbar v. Charleston & W. C. R. Co.*, 186 Fed. 175.

II. It may be conceded that had the undisputed evidence shown that the widow since being abandoned by the deceased had led a dissolute life such as to absolve the husband of all legal duty to support her, this would bar her recovery. *Ft. Worth & D. C. R. Co. v. Floyd* (Tex. Civ. App.), 21 S. W. 544. The evidence on this point, however, was conflicting. Its weight and the credibility of the witnesses were for the jury. The trial judge was much better able to determine the weight and credence to be given to this evidence than we are. He refused to grant a new trial. An appellate tribunal should be extremely slow to override the judgment of both the jury and the trial court on a question of fact where there is any evidence to support it. *Hertzog v. Star Logging Co.*, 73 Wash. 197, 131 Pac. 806; *Perkins v. Northern Pac. R. Co.*, 199 Fed. 712.

The judgment is affirmed.

Morris, C. J., Crow, Fullerton, and Main, JJ., concur.