[No. 17109.  Department One.  January 19, 1923.]

H. L. CASTNER, *as Administrator etc., Appellant,* v. TACOMA GAS & FUEL COMPANY *et al., Respondents.*[1]

GAS — EXPLOSIONS — NEGLIGENCE — EVIDENCE —·SUFFICIENCY.  The negligence of a gas company is a question for the jury, where it appears that, on discontinuing a service, it cut off the gas at the meter valve, instead of at the street, using the pipes under the house for the storage of gas, without giving them any attention or making any inspection, and that an explosion blew up the house, and the broken gas pipe tended to show that it was in part an old break.

SAME.  Whether a house was destroyed and the inmates killed by an explosion of gas, is a question for the jury, where there was a violent explosion, the gas company used the pipes under the house for the storage of gas, neighbors detected a strong smell of illuminating gas on the afternoon of the explosion, and one; of the persons killed was seen to hurry into the house, asking what was the matter, upon being called, just before the explosion.

DEATH (14)—ACTIONS FOR WRONGFUL DEATH—FOR WHOSE BENEFIT—DEPENDENTS.  Under Rem. Comp. Stat., § 183, an action for wrongful death of a mother for the benefit of surviving children must

[1]Reported in 212 Pac. 283.

be dismissed where it is neither pleaded or proved that the children were dependent upon the deceased.

SAME (29)—DAMAGES—FUNERAL EXPENSES. The cost of funeral expenses is not recoverable in an administrator's action for wrongful death for the benefit of certain relatives or dependents, under Rem. Comp. Stat., § 183.

Appeal from judgments of the superior court for Pierce county, Askren, J., entered September 22, 1921, upon granting nonsuits, dismissing actions for wrongful death and for damages to property. Affirmed as to one action; reversed as to the other.

*Govnor Teats, Leo Teats,* and *Ralph Teats,* for appellant.

*Grosscup & Morrow* and *Chas A. Wallace,* for respondents.

FULLERTON, J.—On January 27, 1921, at about 6 o'clock in the evening, the home owned by Melvin H. Castner, in South Tacoma, occupied by the owner and his mother, Cora E. Castner, was demolished by an internal explosion, in which both mother and son received injuries from which they thereafter died.

Appellant, H. L. Castner, as administrator of the estate of Cora E. Castner, brought an action against the Tacoma Gas & Fuel Company and D. J. Young, superintendent of the company, on behalf of the two surviving children of the deceased, for her wrongful death and for reimbursement in the sums paid for her funeral expenses. He also brought an action, as administrator of the estate of Melvin H. Castner, to recover for his funeral expenses and for the value of the property destroyed. Both actions were based upon the theory that the explosion was caused by leaking gas from the mains owned and controlled by the gas company, and that the leak was the result of the negligence of the gas company. The cases were tried sepa-

rately in the court below, and in each case, at the close of the plaintiff's evidence, a motion for a nonsuit was granted. The cases were consolidated for the purpose of this appeal.

The evidence shows that gas was installed in the house destroyed by the explosion in 1911; that it was discontinued in May, 1913, at which time the meter was removed; and that after the removal of the meter, gas was not used by the occupants of the house. The respondent company maintained a gas main in the street upon which the house faced, and a service pipe extended under ground from the main to the northwest corner of the house and for a foot or so thereunder, coming to the surface of the ground under the house. At this point, above the surface of the ground, there was a cut-off valve attached by an elbow and reducer, and to this there was also attached a governor, where a meter was installed when service was being rendered the house; beyond the governor the pipe extended up through the floor of the house into the kitchen. There is evidence that, when the company cut off the gas, it did so by closing the valve under the house, although there was a similar valve where the service pipe tapped the main. This latter valve was not closed until some time after the explosion. The day after the explosion, officers from the police department went to the place and there found a broken gas pipe, which the evidence tended to show was a part of above described pipe. The evidence also tended to show that the break in the pipe, for about two-thirds of its circumference, was an old break, and that the remainder was fresh. This break was at a point at the elbow which connects to the valve, and about a foot toward the street from the governor.

Only the two persons injured were in the house at the time, so there is no direct evidence as to what oc-

curred inside. The evidence shows, however, that Mrs. Castner had been visiting some friends in, the afternoon and returned to her home to prepare dinner for herself and her son at about 5:30 o'clock. The son, Melvin, came out from Tacoma about 6 o'clock, leaving a street car about one-half block from the house. As he came up the street, his mother was standing in the doorway and called something to him, to which witnesses testify he replied: "Yes. What is the matter?" He hurried to the house and went inside with his mother. Within a few minutes, a tremendous explosion occurred, the entire house being forced into the air in a sheet of flame, falling back in a tumbled heap. Windows in houses at some distance were shattered. Neighbors, who immediately rushed to the ruins, found Mrs. Castner terribly mangled and injured with her clothing on fire. The fire was extinguished, but she died almost immediately. The son was taken to a hospital, where he died early the following morning without giving any explanation of the explosion, except to say at one time: "It must have been gas."

On the arrival of the neighbors on the scene, gas was escaping from the broken pipes, and all the witnesses testified to smelling it. A neighbor testified that there had been a strong smell of illuminating gas in her garage that afternoon and that the wind was blowing directly from the Castner home in that direction. There was evidence also tending to show that the gas company gave no attention to the service pipe subsequent to the time of the removal of the meter. There was a dispute in the evidence as to the ownership and control of the service pipe, but there is little dispute that the gas company, when it shut off the gas from these premises, shut it off at the valve next to the meter and not at the curb, and that it was using the

pipe at the time the accident occurred as a storage place for its product.

In 28 C. J. 595, speaking of the liabilities and duties of a gas company, it is said:

"The company is liable for the negligent manner in which its servant sent to turn the gas on, or off, performs his duty. It has been held that failure of a gas company, on discontinuance of the use of its gas by a patron, to cut it off at the street valve, so as to exclude it from the service pipe, and cutting it off at the meter valve, so as to leave it stored in the service pipe up to the meter valve, do not constitute negligence *per se*. But since the gas, in such case, belongs to the gas company, the law imposes upon it the duty to exercise care in the storing thereof, to the end that injury may not result, and it is bound to inspect, maintain, and repair the service pipe as long as it is so used."

In support of the statement, there is cited the case of *Canfield v. West Virginia Central Gas Co.*, 80 W. Va. 731, 93 S. E. 815, L. R. A. 1918A 808. In that case it is said:

"The storing of gas by a gas company in the service pipe of a former customer, on his premises, after his discontinuance of the use of gas, cannot be deemed to be an act of negligence, merely because there is no legal right in the gas company so to store its gas; for, if lack of legal right of occupancy amounted to negligence, every person wrongfully leaving any object on the premises of another, however harmless it might be, would be guilty of negligence and might be liable for any injury resulting from it. Gas so stored is not more dangerous than gas stored elsewhere in pipes and tanks, if the service pipe in which it is stored is sufficient and in good condition. Since the gas in such case, belongs to the gas company, and is a dangerous agency, the law imposes upon its owner duty to exercise care in the storing thereof, to the end that injury may not result. For the purposes of custody and control of his gas he makes the service pipe his own and

is bound to maintain it in good and safe condition as long as he so uses it."

As to the care required of the company under such circumstances the court quotes with approval the rule laid down in *Koelsch v. Philadelphia Co.*, 152 Pa. St. 355, 25 Atl. 522, 18 L. R. A. 759, where it is said:

"While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. This would require in the case of a gas company not only that its pipes and fittings should be of such material and workmanship, and laid in the ground with such skill and care, as to provide against the escape of gas therefrom when new, but that such system of inspection should be maintained as would insure reasonable promptness in the detection of all leaks that might occur from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business."

It is further stated by the court:

"A gas company is bound to inspect for discovery of leaks due to defects in materials, deterioration of pipes and valves, displacement or dislocation by accident, the weather, and the like, because it knows these things often occur."

Under the record, therefore, we are clear that there was sufficient evidence in the second of the cases to carry to the jury the questions whether the house was destroyed by an explosion of gas, and whether the gas escaped from the service pipe of the gas company for want of the exercise of reasonable or ordinary care in its maintenance.

The judgment of the trial court in the action brought by appellant as administrator of the mother must be affirmed. It is neither pleaded nor proven that either of the surviving children were dependent upon her.

This action was brought under the provisions of ch. 123, Laws of 1917, p. 495 (Rem. Comp. Stat., § 183), which law is identical, so far as this action is concerned, with the Federal employers' liability act (8 Fed. Stat. Ann., p. 1208), and the courts have held repeatedly under that act that recovery is limited to the pecuniary loss sustained by those for the benefit of whom the action was brought. *Fogarty v. Northern Pac. R. Co.,* 74 Wash. 397, 133 Pac. 609, L. R. A. 1916C 800; *Fogarty v. Northern Pac. R. Co.,* 85 Wash. 90, 147 Pac. 652; *Western Union Telegraph Co. v. McGill,* 57 Fed. 699, 21 L. R. A. 818; *Gulf C. & S. F. R. Co. v. McGinnis,* 228 U. S. 173.

In the latter case the trial court held that damages in favor of a surviving adult daughter could be recovered under the Federal liability act. Commenting on this, the supreme court said:

"The Court of Civil Appeals upheld this ruling, saying that 'the Federal statute expressly authorizes the suit to be brought by the personal representative for the benefit of the surviving wife and children of the deceased, irrespective of whether they were dependent upon him, or had the right to expect any pecuniary assistance from him.' This construction of the character of the statutory liability imposed by the act of Congress was erroneous. In a series of cases lately decided by this court, the act in this aspect has been construed as intended only to compensate the surviving relatives of such a deceased employe for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given. The recovery must therefore be limited to compensating those relatives for whose benefit the administrator sues as are shown to have sustained some pecuniary loss."

In each of the actions recovery is sought for funeral expenses. While there is some disagreement in the authorities whether items of this sort are recoverable, the weight of authority and the better reason is, we think,

that they are not recoverable. *Delaware R. Co. v. Hughes*, 240 Fed. 941.

The judgment of the court in the first action is affirmed. In the second it is reversed and remanded for a new trial.

PARKER, MITCHELL, TOLMAN, and BRIDGES, JJ., concur.