[No. 19276. Department One. October 13, 1925.]

GERTRUDE MARY ROSCOE, *as Executrix etc., Respondent,* v. THE CITY OF EVERETT, *Appellant.*[1]

WATERS AND WATERCOURSES (80, 87)—PUBLIC WATER SUPPLY—PROTECTION FROM POLLUTION—NEGLIGENCE. Negligence of a city in permitting its water supply to be polluted is a question for the jury, where it appears that it permitted river waters, taken from a source close to where city sewers entered into the river, to be pumped into the line which was physically connected with all the city water in the district, with nothing but a closed gate valve to prevent pollution of the supply, and that the valve could have been easily sealed or the by-pass removed, and that the city failed to make inspection of the valve for more than three months after the connection was made.

SAME (80, 87)—PUBLIC WATER SUPPLY—PROTECTION FROM POLLUTION—NEGLIGENCE—NOTICE. There is sufficient notice to a city of the pollution of its water supply, where complaint was made to the officers of the health department and pollution of the water was shown for over three months, so that the city would be charged with constructive notice thereof.

SAME (80, 87)—PUBLIC WATER SUPPLY—NEGLIGENCE — INSTRUCTIONS. In an action for the pollution of a city water supply through "faulty construction" of the water system, error cannot be assigned upon the giving of an instruction as to the "method of construction" where it must have been understood to refer to evidence of a gate valve, the only obstruction to a connection with a polluted source, and which was not properly guarded.

SAME (80, 87). The promise by a mill company to remove a by-pass, connecting the city water supply with the mill's polluted supply, does not relieve the city from liability for negligently allowing the by-pass to remain and pollute the city water supply.

[1]Reported in 239 Pac. 831.

TRIAL (52)—MISCONDUCT OF COUNSEL—CORRECTION OF OBJECTION-
ABLE MATTER. Prejudicial error cannot be assigned upon misconduct
of an attorney in his argument to the jury in attacking the cred-
ibility of a witness by referring to the fact that he was interested
and might be criminally prosecuted, where the court sustained the
objection thereto, and stated that the case did not involve any
criminal action.

APPEAL (458)—HARMLESS ERROR—EVIDENCE — FACTS OTHERWISE
ESTABLISHED. Error cannot be assigned upon the admission of a
test of the polluted water of a river, where there was other evidence
that city sewers were discharged into the river at the point in ques-
tion.

Appeal from a judgment of the superior court for
Snohomish county, Bell, J., entered August 26, 1924,
upon the verdict of a jury rendered in favor of the
plaintiff, in an action in tort. Affirmed.

*O. Duncan Anderson* and *J. W. Dootson,* for appel-
lant.

*Stiger & Kaune,* for respondent.

ASKREN, J.—Plaintiff brought this action to recover
damages for herself and for the benefit of her minor
child on account of the death of her husband, alleged
to have been caused by drinking polluted water fur-
nished by the city of Everett. From a judgment ren-
dered upon the verdict of the jury in favor of plain-
tiff, the defendant has appealed. Appellant challenges
the sufficiency of the evidence.

This case involves many of the same facts as are de-
tailed in *Aronson v. Everett, post,* p. 312, 239 Pac. 1011,
whereby polluted water was permitted to pass into the
city mains through a by-pass connection at the Eclipse
Mill Company's plant. For the sake of brevity many
of the facts detailed in that opinion will not be repeated
here. It is sufficient to say that the evidence discloses
that, on April 11, 1923, a six-inch main was laid to con-
nect two laterals, and that, when the connection was so

made, it permitted free circulation of water to the city users in the district served, and also a better service to the Eclipse Mill Company. At the time this connection was made, there was a by-pass which had existed for a great many years. With the making of the connection there was no longer any need for the by-pass. This by-pass had in it what is known as gate valve "A," a valve worked by hand, and which when closed effectually prevented water from passing through the pipe.

It was the contention of the city that, when the connection was made, this valve was closed, and that representatives of the mill company were advised of the danger and promised to remove the by-pass. There is a very sharp conflict in the testimony, the representatives of the mill company denying that they were ever notified that it was dangerous to have this valve open; denying that it was closed or had been kept closed for many years past, and further denying that they either promised to keep the valve closed or to remove it. There was also very sharp conflict in the testimony as to complaints made to city authorities. There is abundant testimony from which the jury had a right to find that complaints were made to the city long before any action was taken to remedy the defect. Appellant's own witness admitted that while gate valve "A," if kept closed, was an effectual way of preventing the passage of water, since it was the only obstruction preventing the passage of water from the mill company's main to and into the city mains, and since the water of the mill company came from the Snohomish river, a polluted source, it was dangerous to leave such a by-pass at the point in question. It is true that the city mains usually carried a higher pressure than the mill company's mains; but this varied

owing to the changing operations in the mill, and to the increased use of city water in the summertime.

There was also evidence that the city never inspected the valve in the by-pass from the date of its installation of the new main on April 11, until the 25th day of July, 1923; that no effort was made during that time to determine whether it was closed, or to determine if it had been removed by the mill company. The situation here is not parallel with those cases where the chance of pollution is small and incidental, as, for instance, where a city watershed covers a great deal of territory and constant policing would be required to prevent any contamination. In this case the city permitted water taken from a point close to where city sewers emptied into the river to be pumped into a line which was physically connected with all the users in the district. Nothing but the closed gate valve could prevent the polluted water reaching the consumers. The ease with which the valve could be sealed or the by-pass removed, and the imminent danger to be apprehended by failure so to do, are strong factors in the question of the city's negligence. It thus became a question of fact for the jury to determine, in the light of all the evidence in the case, whether or not the city was negligent in leaving this by-pass with the gate valve; whether it was negligent in its failure to inspect at any time thereafter, and whether it was negligent for failure to ascertain and remedy the condition of the polluted water after notice had been given it. The court did not err in submitting this question to the jury. *Castner v. Tacoma Gas & Fuel Co.*, 123 Wash. 236, 212 Pac. 283.

Some contention is made by appellant that notices were given to the health inspector, and that such notice should not be construed to be notice to the city as far as the water department was concerned. It seems to

us that complaints made to the health department were
at least some notice to the city, for the complaints were
made to the particular officers of the city selected to
handle matters relating to the public health, and who
were qualified to determine the city's course of action.
Indeed, it might well be said that the health officer
would be far better qualified to act upon such informa-
tion than an officer of the water department whose
knowledge might be confined to the physical construc-
tion of the plant rather than to the matter of precau-
tions necessary to be taken to secure immunity from
pollution. But the question more clearly is whether,
considering the necessarily close relationship between
the city health department and the purity of water
furnished by the city to its users, it can be found that
notice reached the responsible authorities of the water
department. In any event, however, the evidence
showed the polluted condition of the water for a suf-
ficient length of time to make it a question for the jury
as to constructive, if not actual, notice to the city.

Objection is made to an instruction given by the
court in which four different grounds of negligence
based upon the complaint are set out. One of them
had to do with the question of the manner or method
of construction of the connection between the city
system and the Eclipse Mill Company's plant. Appel-
lant insists that the evidence in the case does not up-
hold the allegation of the complaint that there was
faulty construction, and that therefore no instruction
should have been given upon this point. It may be
that this instruction, read strictly in connection with
the testimony of the witness Carver that there was
nothing wrong with the method of construction, is
subject to the objection appellant makes; but we think
that, taken together with all the evidence in the case,
it must have been intended by the court, and under-

stood by the jury, to have had reference to the making
of the connection of the 34th Street line, and leaving
the by-pass, in which there was a gate valve, un-
guarded and unprotected. There was testimony to the
effect that the gate valve should have been either
sealed to prevent its being opened, or that it should
have been protected so that no one could get at it, or,
in lieu of either of these, that a warning sign should
have been placed upon it. So we think that the jury
must have understood that when the words "method
of construction" of the connection were used, they had
reference to this situation presented by the testimony.

Further objection is made to the giving of an in-
struction that any promise made by the mill company
to remove the by-pass would not relieve the city. This
instruction correctly states the law. It seems to be
contended, however, that the court should have supple-
mented it by stating to the jury that it would have
the right to take such promise, if made, into considera-
tion upon the question of whether or not the city was
exercising ordinary care. We think this was suf-
ficiently covered by the further instruction wherein the
jury were told, "but you may and should consider any
directions or orders given by the defendant, if you find
there were such given, and all of the testimony as to
the manner and method of the use of the connection
and its appliances, in determining whether or not the
city was negligent in the maintenance of the connection
referred to in the testimony, and give such fact such
weight as you deem it entitled to as bearing upon such
issue." This instruction seems sufficiently favorable
to appellant, for if the promise of the mill company to
remove the by-pass could not relieve the city, it seems
difficult to understand how such a promise could have
any material bearing upon the question of ordinary
care, when viewed in the light of the testimony of the

city's own witnesses that no inspection of any kind was made to see whether the valve was kept closed or the by-pass removed.

It is also claimed that a new trial should have been granted because of misconduct of the plaintiff's attorney. It appears that, upon one occasion, counsel for plaintiff, in referring to the testimony of the water superintendent, attacked his credibility because of his interest in the proceedings, and referring to the fact that he might be prosecuted criminally for his acts in connection with the failure to take proper precaution to protect the people of the city of Everett against pollution of the water. On exception being taken to the statement, the court sustained appellant's counsel, and called to the attention of offending counsel the fact that the case did not involve any criminal action. It is now claimed that this prejudiced the jury. Counsel for appellant did not specifically ask the court to instruct the jury to disregard the statement, but we think that the court's statement to counsel would be so understood by the jury, and we cannot say, under the circumstances, that there was anything in the remark prejudicial to appellant that was not cured by the court's statement in the presence of the jury.

Further complaint is made of evidence offered at the trial as to a test of the water from the Snohomish river made some eight or ten months after the death of respondent's husband. It seemed to be the theory of respondent that it would be necessary to show that the source of the mill company's supply was polluted. There is nothing in the record to indicate whether there was any change in the condition of the water of Snohomish river between the time the test was made and the time of the epidemic; but even if it be assumed that the court was in error in admitting this testimony, no harm can follow, for the testimony of other wit-

nesses, including those of the city, was to the effect that city sewers were discharged into the Snohomish river near the mill company's plant, and that in itself would be sufficient to show contamination and pollution of the source of supply.

We have examined the record with care, and finding no reversible error therein, the judgment of the superior court is hereby affirmed.

TOLMAN, C. J., PARKER, and MITCHELL, JJ., concur.