ESTATE OF TUFTS: TUFTS, Administratrix, Appellant, vs.
CONGER, Guardian *ad litem,* and others, Respondents.

*April 12—June 21, 1938.*

222

*Thomas A. Sanderson* of Sturgeon Bay, for the appellant.
*Lyman C. Conger* of Kohler, for the respondents.

FRITZ, J. Under the provisions of § 688, title 46, and § 51, title 45, USCA, the $7,500 paid as damages for the death of Melvin Tufts, deceased, while employed as a seaman, are for "the benefit of the surviving widow or husband and children of such employee." The deceased was lawfully married to Viola Tufts, his first wife, on April 12, 1922, and they had two children, Melvin Tufts, Jr., born November 11, 1922, and Donald Tufts, born November 10, 1925. Upon the wife's complaint, a judgment of divorce was entered on June 25, 1927, in an action in a circuit court of this state, where they resided, but under the statutes then in effect the divorce did not become final until June 25, 1928. The judgment required Melvin Tufts to pay Viola Tufts an amount

in lieu of alimony, and the sum of $20 per month for each child until he was seventeen years of age, but he never made any payments, or exhibited any solicitude for the welfare of the children of that marriage. Although the judgment was not final and effective until June 25, 1928, B. Irene Tufts was married to the deceased on June 13, 1928, in the state of Illinois. Prior thereto Jocelyn Tufts, who is admitted to be the child of the deceased and B. Irene Tufts, was born December 8, 1927; and Caryl Tufts, born December 26, 1928, is also their child.

On this appeal the appellant contends that the court erred in holding that the marriage of B. Irene Tufts and the deceased on June 13, 1928, was not entered into in good faith, and in the full belief that his former marriage had been dissolved; and that the court erred in concluding she was not his widow or entitled to any portion of the funds in question, and in apportioning the fund by assigning $1,222.83 to Melvin Tufts, Jr., $1,711.95 to Donald Tufts, $2,201.09 to Jocelyn Tufts, and $2,364.13 to Caryl Tufts, on the basis of the deprivation of pecuniary benefits, which they might have reasonably received, if deceased had survived.

The court's finding that the marriage on June 13, 1928, was not entered into in good faith, and in the full belief that the deceased's former marriage had been dissolved, is of crucial significance because of provisions in secs. 245.03 (2) and 245.35, Stats., which were in effect at the time of the entry of the judgment of divorce, and on June 13, 1928. Although sec. 245.03 (2), Stats., provided that,—

"It shall not be lawful for any person, who is a party to an action for divorce from the bonds of matrimony, in any court in this state, to marry again *until one year after judgment of divorce is entered,* and the marriage of any such person solemnized before the expiration of one year from the date of the entry of judgment of divorce *shall be null and void;*"

it was nevertheless provided in sec. 245.35, Stats., that,—

"*If* a person during the lifetime of a husband or wife with whom the marriage is in force, enters into a subsequent marriage contract in accordance with the provisions of section 245.12, and the parties thereto live together thereafter as husband and wife, and such subsequent marriage contract *was entered into* by one of the parties *in good faith, in the full belief* that the former husband or wife was dead, or *that the former marriage had been* annulled, or *dissolved by a divorce,* or without knowledge of such former marriage, they shall, after the impediment to their marriage has been removed by the death or divorce of the other party to such former marriage, *if* they continue to live together as husband and wife in good faith on the part of one of them, *be held to have been legally married* from and after the removal of such impediment, and the issue of such subsequent marriage shall be considered as the legitimate issue of both parents."

It must be noted that, in so far as "good faith" is material, under the provisions last quoted, the parties cannot be held to have been legally married, after the removal of the impediment to their marriage because of a prior undissolved marriage, solely by reason of their living together as husband and wife in good faith on the part of one of them, after such removal. On the contrary, in so far as the matter of good faith is involved, such subsequent events and accompanying good faith can operate to validate such an illegally contracted marriage only in the event that *at the time of* the contracting thereof it "was entered into by one of the parties in good faith, in the full belief that the former husband or wife was dead, or that the former marriage had been annulled or dissolved by a divorce. . . ." It is good faith in but the latter respect that is in controversy and crucial in this matter, and in the absence of good faith on the part of B. Irene Tufts in that respect, she cannot be held, by virtue of any provision in sec. 245.35, Stats., to have been legally married from and after the removal of that impediment,

even though she, in good faith, subsequently continued to live with the deceased as husband and wife. Consequently, her contention that the court erred in deciding that the marriage of June 13, 1928, was not entered into in good faith, and in the full belief that the deceased's former marriage had been dissolved, cannot be sustained unless that determination is contrary to the clear preponderance of the credible evidence bearing on the issue of whether B. Irene Tufts entered into the contract in good faith, and in the full belief at that time that his former marriage had been dissolved by a divorce.

The record in the divorce action discloses that it was commenced on September 27, 1926; that the parties were residents of this state, but had separated two years prior thereto; that the action was tried on May 31, 1927, and an entry in the clerk's minutes reads, "Divorce granted to plaintiff, . . ." but that the findings and judgment entered are dated June 25, 1927. Under the above-quoted provisions of sec. 245.03 (2), Stats., it was unlawful for either of the parties to that action to marry again until one year after that judgment of divorce was entered. Nevertheless, on June 13, 1928, before the expiration of that year, the marriage ceremony was performed in Illinois between the deceased and B. Irene Tufts, who then resided and intended to continue to reside in Wisconsin. Prior to that marriage she knew that he was married, and she had lived with him as husband and wife since January, 1926. She also knew that, under the law of Wisconsin, a divorced party could not marry lawfully for one year subsequent to the divorce. She had received information regarding the divorce from the deceased and his sister, but had never tried to secure any independent information regarding it. Her child, Jocelyn, was born December 8, 1927, before the marriage ceremony, and Caryl was born December 26, 1928. In her examination on a

preliminary *ex parte* hearing herein in December, 1936, she did not inform the court as to the date of her marriage or that Jocelyn was born prior thereto, or of the date of birth of either of her children. During the hearings on the question of apportionment, she gave three different dates as to her marriage, and two different dates of birth of each of the children. On October 5, 1937, she first testified that Jocelyn was born December 8, 1928, and Caryl, December 26, 1929, and that she was married to Melvin Tufts on June 13, 1929, after the divorce became final. Later, in that hearing, she stipulated that Jocelyn was born on December 8, 1927, and Caryl on December 26, 1928, and she testified,—

"We were married a year after the divorce became final. It became final on the 27th day of June, 1927. We were married on the 28th of June, 1928, in Chicago."

Finally, after another adjournment, she testified on October 26, 1937, that the correct date of her marriage was June 13, 1928. Those contradictions and changes in her testimony, developed during cross-examination, as to simple but material matters, as to which it was important to correctly inform the court to enable it properly to apportion the funds in any event, when taken into consideration with proof as to her conduct in other material respects, well warranted the statements in the court's decision that,—

"Her conduct prior to her marriage gave no persuasive proof of good faith. She appears to have lived with the deceased in an adulterous relationship for a period of some two years. A part of this time she claims not to have known of the former marriage, but, by her own admission, she knew of that marriage for a considerable period of time, and still continued to live with deceased. . . . The marriage status of Melvin Tufts was apparently a matter of little or no concern to this woman. The matter of the support of his children by a former marriage was of no concern to her. She had available to her the means of determining with absolute certainty when she could legally marry this man. Common

prudence and a decent respect for law should have prompted her to secure this information.

"After the death of Melvin Tufts, and at a time when she should have made a full, fair, and honest disclosure of all material facts to the court, she has followed a directly contrary course. She has given testimony that appears to be perjured repeatedly. She gave three different dates as the correct date of her marriage. Each of these was such as to lend an appearance of legality to her marriage in accordance with the facts she then supposed to be in the possession of the court. She also testified falsely as to the dates of the birth of her two children, apparently so as not to raise a question in the mind of the court as to their legitimacy. The entire course of conduct of this woman from the beginning of her relations with Melvin Tufts to and through her appearances in the court are not such as to support an assumption that her marriage was entered into 'in good faith in the full belief that the former marriage has been dissolved.' "

Under the evidence and circumstances and the inferences which the court could reasonably draw therefrom, its findings on the issue of good faith in the respect in which it was in controversy herein are not to be disturbed on an appeal. Consequently, its conclusion that B. Irene Tufts was not the surviving widow of the deceased, and not entitled to participate in the apportionment of the fund, must be sustained.

In support of the appellant's contention that the court erred in apportioning the fund among the four children of the deceased, she claims that under the provisions of § 688, title 46, and § 51, title 45, USCA, which are applicable to the fund involved herein, and the decisions in relation thereto, the apportionment must be predicated upon the deprivation of pecuniary benefits which the beneficiaries might have reasonably received, if the deceased had lived; that the children by the deceased's first marriage should not participate in the apportionment on the same basis as the children of the second marriage, because mere legal liability of the deceased for

their support, etc., is not sufficient; and that the apportionment to the children of the first marriage on a parity with the children of the second marriage based on age alone is error. In passing upon those contentions, it must be noted that the deceased appears to have provided for the support and care of his two younger children, but that he had failed to do so for the two older children a number of years; and that he was in default in excess of $2,000 in the payments which the judgment of divorce required him to make for that purpose, notwithstanding efforts to compel payment thereof by contempt proceedings. The applicable provisions in the federal statutes cited above are to the effect that, in an action for damages for death sustained by a seaman in the course of his employment, the damages for which the employer is liable shall be "for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee." The parties herein appreciate that the damages recoverable, under the federal acts cited, are only such as flow from the deprivation of pecuniary benefits which the beneficiaries might have received if the deceased had not died from the injury, and that there can be no recovery by a dependent, unless he can show that the death of the deceased has deprived him of a reasonable expectation of pecuniary benefits. But in response to appellant's contentions to the contrary, the respondents contend that even in the absence of willing and voluntary fulfillment by the deceased of his obligation to support a dependent, the existence of a legal obligation on his part to do so (and particularly when performance of that obligation has been adjudged, as in this case, by a judgment requiring definite payments to be made for the support of the children of the first marriage) is sufficient to justify a reasonable expectation of pecuniary benefits. Appellant attaches con-

siderable significance to statements in some decisions to the effect that "the pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test;" and that, in case of a child seeking to recover for the loss of a parent, other circumstances should be taken into consideration, such as the loss of the care, counsel, training, and education which the child might, under the evidence, have reasonably received from the parent, if there be evidence of the fitness or inclination of the parent, and that the child has been actually deprived of such advantages. *Michigan Cent. R. Co. v. Vreeland,* 227 U. S. 59, 70, 33 Sup. Ct. 192, 57 L. Ed. 417. Obviously, the statement that legal liability is not the sole test does not conclusively exclude such liability, when it does exist, as a test. As the recovery authorized under the statute can be also for the benefit of a deceased employee's parents or even of his next of kin, as to whom there may not be any legal liability for support at common law or under state statutes, others than those in whose favor there was a legal liability are within the scope of the statute, and, consequently, that is not the sole test. But, although there are other circumstances which should be taken into consideration, it does not follow that, notwithstanding the existence of legal liability, there can be no reasonable expectation of pecuniary benefits, because they had not been given voluntarily by the deceased. *Fogarty v. Northern Pacific R. Co.* 85 Wash. 90, 147 Pac. 652. Likewise, in the following cases it was held, or at least recognized, that the existence of the legal liability to support is sufficient to justify a reasonable expectation of pecuniary benefits and therefore an award of substantial damages, even though the decedent was not disposed to fulfil his legal obligation; and that the extent of the legal obligation afforded sufficient basis to measure the damages. In *Southern R. Co. v. Miller* (4th Cir.), 267 Fed. 376, 381, brought on behalf

of a widow and child, the decedent had lived with his wife only three or four months and had never seen the child, who was born the following September. The court said,—

"The court was asked to rule that only nominal damages could be recovered, because Miller and his wife had separated soon after their marriage, and he had not thereafter contributed to her support. But there had been no divorce, and nothing appears to show that she might not at any time have enforced her conjugal rights under the laws of Virginia. This being so, she was entitled to substantial damages, if the jury found in her favor, as seems to be plainly held by the supreme court in *New Orleans & N. E. R. Co. v. Harris*, 247 U. S. 367, 372, 38 Sup. Ct. 535, 62 L. Ed. 1167."

In the case cited in that excerpt, the court, in holding that an award to a dependent mother could not be sustained because of a widow's preferential rights, under the statute, said,—

"The act makes the widow sole beneficiary when there is no child and only in the absence of both may parents be considered. The deceased left a widow and although they had lived apart no claim is made that rights and liabilities consequent upon marriage had disappeared under local law. . . . In the circumstances, proof of the mother's pecuniary loss could not support a recovery."

And in the following statements, legal liability was considered sufficient to justify a reasonable expectation of pecuniary benefits, even though there was no other evidence of pecuniary loss, to wit:

"Again it is insisted that error was committed in submitting the case to the jury because there was no evidence of pecuniary loss resulting to Gotschall's father, on whose behalf the suit was brought. But this disregards the undisputed fact that the deceased was a minor and, as under the Minnesota law the father was entitled to the earnings of his son during minority, the question is one not of right to recover, but only of the amount of damages which it was

proper to award." *Minneapolis & St. Louis R. Co. v. Gotschall*, 244 U. S. 66, 68, 37 Sup. Ct. 598, 61 L. Ed. 995.

"How much of this measures the loss of his widow and children? The answer is: As much as they as wife and children, as reasonably estimated, had the right to receive from him. The capitalized sum which represents this is not measured by either the conjugal affection or philoprogenitiveness of the decedent. Nor is it affected, nor can it be, by the possibility or probability that he might seek relief from the legal obligation to which he is subject. . . . The doctrine we invoke implies that a legal obligation to contribute, resting upon a proven ability to contribute, justifies a finding of reasonable expectation as the basis for an admeasurement of pecuniary loss." *Briscoe v. Philadelphia & R. R. Co.* (D. C.) 274 Fed. 476, 477, approved in 279 Fed. 680.

It follows that the court did not err in apportioning part of the fund in question to the children of the deceased by his first marriage, although the basis for a reasonable expectation of pecuniary benefits to them was but the legal liability of the deceased for their support, as adjudged in the divorce decree. As that decree definitely provided for payments which the deceased's earning capacity and earnings enable him to make for the benefit of those children, and the court was not obliged to assume that he could succeed in continuing to avoid the processes of the law, it was not obliged to conclude that, notwithstanding that enforceable judgment, there was no reasonable expectation of pecuniary benefits to those children. There are circumstances which admitted of a somewhat different apportionment, but as it appears that the court had all of the facts and circumstances well in mind, and gave fair consideration thereto, its conclusion that the children of the first marriage should be on a parity with the two younger children must be sustained.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting*). If this case involved only the distribution of money, I would not write this dissent.

But the ruling affects the status of legitimacy of the two daughters. It is based on a finding which is not supported by the record, namely, the finding that Irene Tufts did not act in good faith at the time of the wedding ceremony. This finding is against the great weight and clear preponderance of the evidence, and it is to this finding that I object.

If the usual and accepted doctrine concerning entry of judgment is adhered to, the mother of these children became the lawful wife of their father on June 13, 1928. Even if that rule is not as I understand it to be, she became the lawful wife of Melvin Tufts under the laws of this state on June 25, 1928, because she had entered into a marriage contract with him on June 13th, in good faith, believing that his former marriage had been finally and lawfully ended May 31st.

From a certified copy of the minutes kept by the clerk of the circuit court for Sheboygan county, where the divorce was granted, it appears that on May 31, 1927, the case of Viola Tufts against Melvin Tufts was called for trial, and that the plaintiff and her counsel appeared, as did the divorce counsel. The defendant was in default. The taking of proofs proceeded and at the conclusion of the testimony there was a decision. The minutes read:

"Divorce granted to plaintiff on grounds of nonsupport. Custody of children awarded to plaintiff."

In *Potter v. Eaton* (1870), 26 Wis. 382, 383, the record recited the verdict of the jury and then read: "Therefore it is considered and adjudged by the court that the plaintiff in this action have judgment against . . . the defendants. . . ." Afterwards more formal judgment was docketed and execution issued. There was an application to have the docketing and all subsequent proceedings set aside, on the ground that no judgment had ever been *entered*. Mr. Chief Justice DIXON said:

"The words 'have judgment,' in the entry here, are equivalent to 'hereby have judgment,' or 'recover,' as found in the

same connection in ordinary entries or forms of judgment. After reciting the trial and verdict, the record proceeds: 'Therefore, it is *considered and adjudged by the court,* that the plaintiff in this action *have judgment,*' etc. This is a judgment, and not an order for a judgment as the appellant contends. . . ."

In *Zahorka v. Geith* (1906), 129 Wis. 498, 500, 109 N. W. 552, 553, the facts were as follows: There was an action for divorce in the circuit court. An entry was made in the record, showing that the plaintiff had appeared by her attorneys, and that no one appeared for the defendant, and "he being in default, upon proofs taken in open court judgment is ordered for plaintiff and against defendant." The clerk never entered a formal judgment in obedience to this direction, but it was held that a judgment of divorce ordered and entered fourteen years later, *nunc pro tunc,* was binding and effectual in dissolving the marriage as of the date of the order for judgment. This decision was based upon authorities holding that a judgment is rendered and the rights of the parties are established at the time the court pronounces its decision. See *State v. Newman* (1888), 75 Cal. 213, 16 Pac. 887; *State v. Cook* (1888), 77 Cal. 220, 17 Pac. 923, 19 Pac. 431; *Allen v. Voje* (1902), 114 Wis. 1, 89 N. W. 924.

The last case is authority for the proposition that the decision of the court is a judgment whether formulated in writing by the judge or declared by him orally. If declared orally, the duty rests upon the clerk to write out the substance of the decision upon his record and it is then entered as effectively as if written out and signed by the judge.

In the present case, the trial court made the following finding:

"That the minutes of the record of the circuit court of Sheboygan county, Wisconsin, show that on May 31, 1927, a divorce was granted to Viola Tufts from Melvin Tufts. . . ."

This finding conclusively shows that the judgment of divorce was entered on the record on May 31, 1927. Notice was thereby given to the world that a divorce had been granted. Upon the authority of the cases mentioned above, it is clear that this was an entry of the judgment, although not so considered by the trial judge in the present action. The later filing of a formal judgment merely served to set forth the decision in greater detail, and could in no way impair the validity of the original entry on May 31, 1927.

The evidence convinces me that Irene Tufts entered into the marriage contract with Melvin Tufts in good faith, believing that his former marriage had been dissolved. The trial court, having formed the opinion that the appellant had purposely misstated the facts, decided not to believe her testimony. But the maxim, *"Falsus in uno, falsus in omnibus,"* is a rule of credibility rather than a penal statute. Investigation to find the truth should continue even when perjury has been discovered. Although a witness has in some particulars testified falsely, his testimony in other particulars, if supported by credible evidence, must be considered.

The fact that the appellant changed her testimony in respect to important dates should not be taken too strongly against her. Even the first wife, who had no motive to falsify, became confused, gave two dates for her marriage, and placed the divorce in the wrong year. The appellant knew that the divorce was granted in May, 1927. The marriage date was fixed in her mind by reference to the time when the divorce became final. When she was told that the effective date of the divorce was later than she had at first thought, she very naturally thought that she had made a mistake about the date of the marriage, also, because she remembered waiting out the year.

It appears from the record that the appellant knew of the former marriage and knew that the divorce was not final un-

til a year had expired. It cannot be doubted that she planned to have a marriage ceremony performed as soon as it would be legal. The only reasonable explanation for the choice of June, 1928, as the time for the marriage is that she believed the divorce would then be final. No reason appears why she could not have waited a few more weeks if she believed it necessary. If, as the trial judge concluded, her purpose was to give an appearance of legitimacy to their relationship before the birth of the second child, she might have chosen any other month in the year, because the child was not born until December.

During her relationship with Melvin Tufts, the appellant had completely changed his way of life. From a social viewpoint, there had been a successful relationship. But she wished to make it legal, as well. Her husband and his sister told her when the divorce was granted, and it is unlikely that she knew anything about the entry of a formal judgment. She waited one year. The situation speaks so forcefully of her intention to have a legal marriage, and to have the marriage ceremony performed as soon as it would be legal, that I cannot believe she would wilfully defeat that intention by knowingly violating the law.

I am authorized to say that Mr. Justice MARTIN concurs in this dissent.