### BRISCOE v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania.  July 14, 1921.)

No. 7772.

1. **Evidence ⊚⇒75—Facts must be determined on assumption that all available evidence was presented.**
   When it is to the interest of a party to make the existence of any fact clear, it is fair to assume that such party has offered all the evidence within reach, and the fact must be determined on that assumption.

2. **Death ⊚⇒95(3)—Damages to family measured by duty to support.**
   Damages for wrongful death, recoverable on behalf of the wife and children of deceased, are measured by the amount from his earnings which he was under legal duty to contribute to their support, and not by the amount he actually contributed during his lifetime.

At Law.  Action by Catherine Briscoe against the Philadelphia & Reading Railway Company.  On motion by defendant for new trial. Denied.

Julian A. Pilgram, of Pottsville, Pa., and John C. Oldmixon and Frank F. Davis, both of New York City, for plaintiff.

William Clarke Mason, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.  This motion has two aspects.  In one it is in arrest of judgment, based upon the asserted absence of any evidence in support of it.  In the other, it is an appeal to the court to exercise its discretion in supervising the estimate of damages made by the jury.

[1] 1. The first point made is that plaintiff failed to offer any evidence which could support a finding that the plaintiff's decedent met his death in the smash-up caused by the collision of two trains of the defendant.  The vindication of the submission of this question to the jury and its verdict thereon exists, if at all, in the evidence directed to this fact feature of the case.  We will not incumber the record with a recapitulation of it, but content ourselves with the statement of our continued belief in its sufficiency to support the verdict. This necessarily implies the duty of the court to submit it.  The comment of the court upon this phase of the evidence was provoked by the fear that the jury might possibly determine the question, not by the evidence presented, but by the suspicion that the plaintiff was holding something back.  When it is to the interest of a party to make

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the existence of any fact clear, we are still of the opinion that it is fair to assume that such party has offered all the evidence within reach. If it is sufficient, the finding should be made. If the finding cannot be made, the party must accept the consequences. In the absence of anything to so indicate, there is no presumption of bad faith in producing evidence.

[2] 2. The second point made is an averred failure to establish a family relationship. It is not meant by this that no such legal relationship was shown. The point made is that the plaintiff's decedent had, for reasons into which it is unnecessary to go, contributed less money for the support of his family than his earning power would have warranted. The question is best discussed in the abstract. In doing so we will give to the defendant the benefit of the strongest possible fact situation, making clear, however, that this particular husband and father is not of this supposititious type. There are in the world husbands and fathers who are in no real sense deserving of the name. The treatment to which they subject their families may be such as that the wives and children would be better off with them dead than living. If one of them is killed through the actionable negligence of a third person, how far is the right of recovery controlled by the condition of the family skeleton? The probable earnings of the decedent, based upon his capacity and past performances, is a pertinent, because necessary, inquiry. This measures the money value of the life destroyed. How much of this measures the loss of his widow and children? The answer is: As much as they as wife and children, as reasonably estimated, had the right to receive from him. The capitalized sum which represents this is not measured by either the conjugal affection or philoprogenitiveness of the decedent. Nor is it affected, nor can it be, by the possibility or probability that he might seek relief from the legal obligation to which he is subject. How could such an issue be tried?

This doctrine is in no respect in conflict with Gulf v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785. The doctrine we invoke implies that a legal obligation to contribute, resting upon a proven ability to contribute, justifies a finding of reasonable expectation as the basis for an admeasurement of pecuniary loss. The facts of the case, to which the comments of Mr. Justice Lurton were directed, were that a married daughter, living independently of her father, who had neither contributed nor was expected to contribute to her support, was not entitled, as a matter of right, to share equally with the minor children, who were wholly dependent upon their father, in the sum awarded for the father's death. The sum awarded was not to be distributed on the basis of an equal distributive share in his estate, but upon the basis of the pecuniary loss which each one, to whom a right of action was given, had suffered.

3. The third complaint goes to the finding of negligence, or rather to the comments of the trial judge thereon. There is no practical value in this complaint. A verdict based upon a finding of no negligence is no more than a theoretical possibility. Assuming that it had been rendered, the verdict would have been set aside. There would

be a better and stronger basis for a complaint that the trial judge had not directed the jury to find negligence.

4. The final complaint is of the assessment of damages. It is really a restatement of the second complaint in another form. It is not averred that $15,000 is too high an estimate, based upon the capacity and past earnings of the decedent. The complaint is that it is an overestimate of decedent's proven actual contributions to the support of his family, capitalized on a proper basis. For this, as the limit of award, we are referred as authority to Chesapeake v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. Ed. 1117, L. R. A. 1917F, 367; Chesapeake v. Gainey, 241 U. S. 494, 36 Sup. Ct. 633, 60 L. Ed. 1124.

The discussion of the subject of damages, the benefit of which we are there given, is directed to a wholly different point. Whether the jury may apportion the loss among all those who have the right to share therein is not in question. The doing so was encouraged by the trial judge. There was a reason for making the suggestion. What influence, if any, it might have upon the verdict, and whether it would benefit one party or the other, was a question. The trial judge submitted the suggestion to counsel before making. Both parties were willing to have the suggestion made. The apportionment made is open to a possible criticism. All other things being equal, the logical basis of apportionment would be the ages of the recipients, taken inversely, as, in each instance, the expectation of life would overrun the time of majority. All other things, however, may not be equal, as, for illustration, a sum of money set aside for a very young child might well show accumulations and yet an equal fund be wholly exhausted, interest and principal, in meeting the living and educational expenses of one who was older. It cannot, therefore, be positively asserted that the equal division made by the jury was arbitrary.

In discussing the main point raised, we would not wish to be understood as making the findings of fact from the standpoint of which we have discussed the question. The only fact in evidence in any real sense was the contributions which the decedent had made to the support of his family. All else was implied in questions addressed to witnesses, the answers to some of which were negative and to others excluded.

The motion for a new trial is denied.