## ROSS v. McLEAN.

(Court of Appeals of District of Columbia. Submitted October 13, 1925. Decided December 7, 1925. Motion for Rehearing Denied December 19, 1925.)

No. 4196.

1. Trial ⊝═296(9)—Instruction that jury might consider plaintiff's failure to make demand before suit held not error as comment on evidence.

In action against purchaser of race horse to recover as part of purchase price one-third of horse's earnings, instruction that jury might consider fact that plaintiff made no demand before bringing action held not erroneous, in view of further statement that it was exclusive province of jury to determine facts, and that it was not bound by any statement of evidence by court.

2. Sales ⊝═357(1)—Failure of plaintiff to prove demand before suit held to warrant inference that none was made.

Seller of race horse, suing for one-third of its earnings as part of purchase price, has burden of proof, and his failure to introduce evidence of demand for payment before suit warrants inference that no such demand was made.

3. Trial ⊝═193(1)—Court may call jury's attention to evidence, provided it instructs that it is sole judge of facts.

Court may call jury's attention to facts of testimony, provided it clearly instructs that it is sole judge of facts.

4. Trial ⊝═70—Refusal to permit introduction of evidence after charge on effect of failure to produce it held within court's discretion.

In action against purchaser of race horse for one-third of its earnings as part of purchase price refusal to permit plaintiff, after instruction commenting on his failure to prove a demand before suit, to introduce evidence of such demand, held within court's discretion, and not error.

5. Sales ⊝═358(1)—Exclusion of testimony as to plaintiff's compliance with Jockey Club rules in action for part of purchase price of race horse held not error.

In action against purchaser of race horse for one-third of its earnings as part of purchase price, where defendant proved rules of Jockey Club. requiring sales of horses with contingencies to be signed by all parties and lodged at office of club, and then elicited testimony from plaintiff to effect that he had not so filed agreement, but had signed it and given it to defendant, with directions to sign and file, exclusion of further testimony, both on cross-examination and redirect examination, as to statement orally made by plaintiff to secretary of club, held not error.

Robb, Associate Justice, dissenting.

Appeal from Supreme Court of District of Columbia.

Action by Samuel Ross against Edward B. McLean. Judgment for defendant and plaintiff appeals. Affirmed.

D. T. Wright and Philip Ershler, both of Washington, D. C., for appellant.

W. J. Lambert, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. Samuel Ross sued Edward B. McLean in the lower court, alleging that he had sold and delivered to the latter a certain race horse, named the Porter, at an agreed price of $15,000 in cash, then paid, and a contingent one-third interest in all sums thereafter earned by the horse; that the horse afterwards earned various sums, the one-third of which amounted to $22,692.69; that the defendant had failed and refused to pay any part of this sum to plaintiff, although often requested so to do; wherefore he prayed judgment.

The defendant, upon the other hand, alleged that he had purchased the Porter outright from the plaintiff at the agreed price of $15,000, which was paid in full, and denied that he had agreed to pay the plaintiff any part whatever of the future earnings of the horse. A trial was had, with verdict and judgment for the defendant. The plaintiff appealed, and presents various assignments of error.

The assignment first argued in appellant's brief relates to the court's charge to the jury, and requires a reference to certain parts of the evidence. The issue before the jury involved a sharp dispute of fact, to wit, whether the parties had agreed, as part of

the consideration of the sale, that Ross should have a one-third interest in all sums thereafter earned by the horse. It is agreed that the bargain was made between the two parties personally on the 16th or 17th day of May, 1918, and that McLean then and there gave his check to Ross for the sum of $15,000, which for McLean's convenience was dated as of a later date, to wit, June 5th. It is also agreed that at a time prior to June 5th McLean took up the check by paying the sum of $15,000 in cash to Ross at the latter's office. Ross fixes the time of payment as of May 27th or 28th, while McLean states it was May 30th or June 1st.

Ross testified that at the time of the sale it was expressly agreed by both parties that the price of the horse was to be $15,000, cash, and one-third of his future earnings; that, after McLean delivered the check to him, Ross wrote and signed a receipt, which he delivered to McLean, wherein his one-third interest in the horse's earnings was expressly stated; that he then told McLean to file this with the Jockey Club, warning him that, if he failed to do so, "any man running in the races might take the purse away from him, if the horse won," such being the rule of the Jockey Club; that McLean promised to file the paper, but failed to do so, and that Ross afterwards suggested this to him, "certainly half a dozen times"; that he had never received any of the horse's earnings since the sale, although he had been present at races which the horse won.

McLean testified that the price agreed upon for the horse was $15,000, without any "contingency or string tied to the purchase"; that the check for that sum was given in full payment of the price; that Ross gave him no receipt or other paper, nor did Ross ever ask him to file any paper with the Jockey Club, nor why he had not filed a paper with the club.

Each party called several witnesses for corroboration. A stipulation was filed, showing the gross earnings of the horse, together with the times and places thereof, as follows:

1918—May 28, Louisville, $800; June 14, Latonia, $800; June 19, Latonia, $690; August 21, Saratoga, $400; October 1, Laurel, $200; October 5, Laurel, $2,050; October 8, Laurel, $250; October 26, Laurel, $1,830; November 6, Pimlico, $500.

1919—May 30, Louisville, $900; May 24, Louisville, $400; June 4, Latonia, $700; June 14, Latonia, $250; August 22, Saratoga, $1,142.92; September 11, Havre de Grace, $3,750; September 20, Havre de Grace, $100; September 24, Havre de Grace,

$2,257.96; September 27, Havre de Grace, $500; October 2, Laurel, $1,400; October 21, Laurel, $1,437.86; October 25, Laurel, $6,200; November 7, Pimlico, $500.

1920—May 24, Churchill, $900; June 5, Latonia, $6,250; July 14, Windsor, $1,500; August 11, Fort Erie, $1,000; August 30, Saratoga, $2,797.29; September 11, Havre de Grace, $3,650; September 30, Havre de Grace, $6,900; October 9, Laurel, $1,000; October 23, Laurel, $2,000; November 5, Pimlico, $1,075; November 8, Pimlico, $1,000.

1921—July 1, Latonia, $1,500; July 12, Windsor, $500; July 18, Windsor, $900; October 1, Havre de Grace, $1,000; October 5, Laurel, $1,000; October 8, Laurel, $8,500. [1] There was no evidence introduced at the trial tending to show that Ross had made any demand upon McLean for a share of these earnings at any time prior to the filing of the declaration on December 9, 1920. The court, however, instructed the jury upon this subject in its general charge as follows:

"One matter is involved in the case, which you may or may not find to be of any particular moment or significance, but which I think is proper you should consider as a circumstance in the case, and that is that, while the transaction occurred on May 16, or 17, 1918, and the horse within some ten days or two weeks thereafter made his first winning, and thereafter continued to make earnings by winning races during the remainder of that year and 1919 and 1920, no demand of any kind, so far as I recall the testimony, was made by plaintiff upon defendant for his share of one-third of the winning performances of the horse until the filing of this suit, December 9, 1920, some two years or eighteen months after the transaction. As I say, that matter may or may not be significant, but it is a circumstance you may take into consideration, with all of the evidence in the case, in your deliberations concerning the conflicting versions of the transaction as presented by the evidence in the case.

"You are not bound to be governed by any statement of the evidence made by the court. If your recollection accords with that of the court, you may accept it; but, if it differs from it, you will be governed by your own recollection and your own memory. It is your exclusive province, as it is your duty, to determine the disputed issues of fact presented, as well as to determine the weight to be accorded to the testimony of witnesses.

"The court has called your attention to some of the important evidence in the hope this might be of some assistance to you in

reaching a just verdict. The court has not undertaken to do more than sketch part of the testimony. There are various details in the testimony bearing upon the issue which the court has not specifically called to your attention. You will consider all such testimony as carefully and as well as that to which I have called your attention. Bear in mind that you are the exclusive judges of the questions of fact and of the credibility of the witnesses."

The plaintiff's counsel duly excepted to this part of the charge in the following words:

"We further except to so much of your honor's charge as that wherein you advised the jury that, so far as you could recall, no demand of any kind was made by the plaintiff of the defendant. I submit that that matter ought not to be submitted to the jury, because there is no evidence one way or the other upon the point, and if that is to be considered by the jury, evidence ought to be heard on it, and I now offer to introduce evidence on that point; but as the evidence stands we submit that that statement should not have gone to the jury, and those are our two exceptions. Now, I ask your honor to charge the jury this: Under the evidence which has been offered, you cannot find that the plaintiff made no demand before bringing suit."

This request of the plaintiff was overruled, and exception noted. A motion for a new trial was filed by the plaintiff, who offered as evidence in support thereof his affidavit to the effect that on January 6 and December 9, 1919, he had duly mailed written demands to the defendant for the one-third of the horse's earnings, as nearly as he could then ascertain their amount. The motion for a new trial was overruled; the plaintiff excepting.

The appellant contends that, in the absence of any evidence tending to show either that such a demand had been or had not been made, it was prejudicial error for the court to say to the jury that "no demand of any kind, so far as I recall the testimony, was made by plaintiff upon defendant for his share of one-third of the winning performances of the horse, until the filing of this suit December 9, 1920, some two years or twenty months after the transaction."

[2] We think that this was not prejudicial error. The jury were clearly instructed that in this particular, as in all others, they were bound to rely upon their own recollection of the evidence, rather than upon that of the court. Moreover, the burden of proof was upon the plaintiff, and, if he failed to introduce evidence of such a demand, the inference was allowable that none had been made. Briscoe v. P. & R. R. Co. (D. C.) 274 F. 476. This statement finds support in the schedule above given, showing the numerous successful performances of the horse, and the fact that Ross was interested in horse racing, and was present upon some of these occasions, and had repeated conversations with McLean during this period. According to McLean's testimony, indeed, the horse had already won $800 at Louisville at the time when McLean took up his check to Ross by the payment of $15,000. It was competent for the defendant's counsel, therefore, to comment upon this subject to the jury, and for the court to say to them that they might take the matter into consideration, together with all the evidence in the case. The instructions as given had no greater effect than that.

[3] It is an established rule that a court of the United States, in submitting a case to the jury, may call their attention to parts of the testimony, provided the court clearly instructs the jury that they are the sole judges of the facts, and that no rule of law is incorrectly stated. Vicksburg Railroad Co. v. Putman, 118 U. S. 545, 553, 7 S. Ct. 1, 30 L. Ed. 257; Lovejoy v. United States, 128 U. S. 171, 9 S. Ct. 57, 32 L. Ed. 389; Doyle v. Union Pacific Railway Co., 147 U. S. 413, 430, 13 S. Ct. 333, 37 L. Ed. 223; Hamilton v. Empire Gas & Fuel Co. (C. C. A.) 297 F. 422, 429; Tuckerman v. United States (C. C. A.) 291 F. 958, 968.

[4] The refusal of the court to permit the plaintiff to introduce new evidence after the delivery of the charge, and the overruling of the motion for a new trial upon the grounds stated therein, were within the court's discretion. Olmstead v. Webb, 5 App. D. C. 38, 57; Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085.

[5] The record discloses that the defendant offered in evidence certain rules of the Jockey Club, among which was one requiring that the terms of any sale of a horse with contingencies must be signed by all of the parties, and be lodged at the office of the Jockey Club, or with the clerk of the court for transmission to that office. The plaintiff was asked upon cross-examination whether he had complied with that rule. He answered that he had done so by delivering to McLean the written paper above spoken of, which he had signed, and which McLean should have signed and filed. The following then took place:

"By Mr. Lambert: That is not answer-

ing my question. Did you do anything further than that? A. All I did was to give the paper to Mr. McLean.

"Q. Yes. A. And I spoke to the secretary—

"Mr. Lambert: I object, and ask that that be stricken out. * * *

"The Court. I grant the motion and give you an exception."

Upon redirect examination of the witness the following occurred:

"Q. By Mr. Wright: You were asked on cross-examination if you had done anything with respect to complying with the rules of the Jockey Club, and you said that you told the secretary; what did you tell the secretary?

"The Court: I will sustain the objection. (Exception.)

"Mr. Wright: If the witness is permitted to answer the question, he would say, 'I told the secretary that I sold the horse for $15,000 and one-third of his gross earnings.' "

The foregoing ruling is assigned as error, but we think it is correct. The plaintiff was asked upon cross-examination what he had done towards complying with the rules of the Jockey Club respecting contingent interests. These rules required a writtten statement signed by the parties, and made no provision for any oral communication to the secretary. Accordingly it was not responsive for the witness to repeat a conversation with the secretary, and the proffered answer would be no more than proof of a declaration in his own interest, made by the plaintiff in the absence of the defendant.

The record contains other assignments of error—some relating to the computation of the recovery in event of a verdict for the plaintiff; another relating to a requested instruction concerning a presumption as to the contents of the written paper which the plaintiff testified he had delivered to the defendant; but we find no prejudicial error in any of them.

The judgment below is affirmed, with costs.

ROBB, Associate Justice (dissenting). My mind is irresistibly led to the conclusion that the verdict in this case resulted from error of the trial court. The issue, as stated in the majority opinion, "involved a sharp dispute of fact." In such circumstances, it was the duty of the trial judge carefully to avoid any comment on the evidence that might mislead the jury.

At the close of the evidence for the plaintiff, counsel for the defendant in his opening statement said: "We will show you that McLean, having come into the ownership of the horse, raced him at more races at different times, whether they had been a year, or six months, or two years afterwards, *with no attention called to Mr. McLean about any interest.*" It thus appears that counsel for defendant voluntarily assumed the burden of proving that plaintiff had made no demand upon the defendant prior to the bringing of the suit. No testimony was offered by the defendant in support of this statement, presumably because counsel learned that he was mistaken as to the fact. In the majority opinion, no mention is made of the foregoing very material circumstances, but the opinion does contain the observation that "it was competent for defendant's counsel" to comment on the failure of plaintiff to introduce evidence on this point. From what affirmatively appears in the record, it is not only a fair, but an almost compelling, inference that counsel for defendant did not indulge in any such comment in his argument of the case, for the very simple reason that, after giving the jury to understand he would affirmatively prove that prior to the bringing of the suit no demand had been made on McLean, he evidently discovered he was mistaken as to the fact. I say this because it is inconceivable that counsel for defendant, after making such a direct statement to the jury of what he proposed to prove, would have failed to make good his proffer of proof, had the evidence been at hand.

Upon discovering his mistake, therefore, counsel for defendant made no mention of this phase of the case in his argument. Had he attempted to do so, counsel for plaintiff could have replied; but there was no such opportunity for reply by plaintiff's counsel to the misleading comment of the trial judge. Moreover, the refusal of the trial judge to correct his error, after his attention had been specially drawn to it, well may have caused the jury to yield its recollection of the evidence to that of the judge. His formal statement, that the jury was "not bound to be governed by any statement of the evidence by the court," did not help matters, especially as this was followed by the very significant statement: "The court has called your attention to *some of the important evidence.*" In my deliberate opinion, the conduct of the trial judge constituted a serious invasion of the right of the plaintiff to have this issue of fact determined by the jury. The parties were represented by exceptionally able and experienced counsel,

who were quite capable of presenting the facts to the jury without the aid of the court. Certainly, if any comment on the evidence was to be made to the jury, the situation rendered peculiarly applicable the rule that such comment should be fair, and not open to a misleading interpretation.

In my view, it was prejudicial error for the court to strike out plaintiff's answer to the cross-question put to him by defendant's counsel. The answer was responsive, and should have been permitted to stand. It is not contended, as the majority opinion seems to assume, that the answer would have been admissible as affirmative proof. The contention is that a responsive answer to a cross-question should not be stricken out simply because its purport differs from what was expected.

The judgment should be reversed, first, because of the error already pointed out; and, second, because the failure of the court in the circumstances to grant a new trial constituted an abuse of discretion. See Paolucci v. U. S., 30 App. D. C. 222, 12 Ann. Cas. 920, and Mandes v. Midgett, 261 F. 1019, 49 App. D. C. 139.