### RJASKO v. PENNSYLVANIA COAL & COKE CORP.

(Circuit Court of Appeals, Third Circuit. April 12, 1917.)

#### No. 2169.

MASTER AND SERVANT ☞287(11)—INJURIES TO SERVANT—QUESTION FOR JURY —NEGLIGENCE OF MASTER.

In an action for the death of an employé, where it was conceded that the negligence of a fellow employé in touching the signal bell while deceased was removing a car from the elevator was a cause of the accident; evidence *held* not to show that negligence of the employer in failing to repair the signal wire was a concurring cause, so that the trial court properly directed a nonsuit.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1067.]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by Anastasia Rjasko against the Pennsylvania Coal & Coke Corporation. Judgment for defendant, and plaintiff brings error. Affirmed.

George C. Bradshaw and Thomson & Bradshaw, all of Pittsburgh, Pa., for plaintiff in error.

P. J. Little, of Ebensburg, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

McPHERSON, Circuit Judge. The plaintiff, an Austrian subject, sued the defendant, a Pennsylvania corporation, to recover damages for the death of her husband, who was a laborer at one of the company's mines, and was killed by an accident about 2 o'clock in the afternoon of January 21, 1914. In the District Court she was nonsuited on the ground that his death was immediately caused by the negligence of a fellow servant; before us, this negligence is not denied, but the plaintiff asserts that the company also was negligent, and that the jury should have been allowed to decide whether its concurrent fault was an effective cause of the death. Grand Trunk Railway v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; Koelsch v. Phila. Co., 152 Pa. 355, 25 Atl. 522, 18 L. R. A. 759, 34 Am. St. Rep. 653. Assuming that the separate but concurring negligence of two persons furnishes a cause of action against either, we have not found in this record sufficient evidence of the company's fault to require submission to the jury.

The statement of claim charges that the company failed to maintain a signal wire "in a safe and proper condition, but allowed the same to become worn and out of order and unreliable, so that it was unsafe to make use of the same, and, by reason of the signal wire giving a wrongful and improper signal" at the time a car full of coal was being hoisted from the mine, the plaintiff's husband was accidentally knocked from the elevator while attempting to remove the car therefrom, and was killed by falling down the shaft. The wire ran from the engine room to the hoisting elevator that brought the cars to the surface, and carried the signals that governed the elevator's movement. During the two or three weeks before the accident there were some occasions when the wire did not work properly, but reports were made to the person in charge of such matters and the difficulty was remedied at once. No evidence was offered tending to show the cause for these occasional troubles, or describing the condition of the wire or of the push button. About 7 o'clock in the morning of January 21 the bell failed to work, but report was promptly made, the defect was attended to, and thereafter no trouble was experienced until just before the accident. When a loaded car was brought up from the mine, the normal course of events seems to have been this: The elevator carrying the car would be hoisted a little above the surface, and a signal would then be given to stop. The dogs or rests on which the elevator was to be supported would then be adjusted, and a signal of two bells would be given to lower the elevator thereon. This movement would bring the car level with the surface, and thereupon the laborers on duty would take the car from the elevator. At the time of the accident both these signals had been given, the car had been lowered on the rests, and the men were engaged in removing the car. At this moment Louis Patz, one of the laborers, on his own motion took off the cap surrounding the push button. Why he did this seems in some doubt. He said it was because the bell "didn't ring" and he "wanted to see what was the matter with it"; but as he also said in the same connection that he had given the signals we have just referred to and that they had been obeyed, we may fairly sup-

pose him to mean that he may have found some difficulty in ringing—probably had been obliged to press the button more than once. At all events, the situation had become safe; the signals had been transmitted correctly, the elevator was at rest, and the other laborers were removing the car. Nothing would have happened if Patz had not meddled with the bell, but he chose this moment to lay hands on the cap. If something had gone wrong, it was not his business to set it right; his duty was to report, so that a skilled man might be called in. But at this unfortunate instant he interfered, probably out of curiosity, and did something that caused a signal of one bell to be carried to the engineer, who naturally obeyed it and raised the elevator. But the car was then only partly off, and of course was tipped up and then fell back down the shaft. The deceased went down also and was killed, and some evidence tended to show that he would have escaped if he had not been on the elevator in a dangerous and unusual place. We lay no weight on this, however, as no point was made of it on the argument of this writ.

On the facts thus stated we think the nonsuit was right. The sole cause of the accident was the negligence of Patz, and no negligence of the company is shown to have concurred. There was no proof that the care of the bell had been neglected, and it is certainly common knowledge that electric bells sometimes fail to ring at the first attempt. Whenever this happened at the shaft in question the proper attention was available, and indeed such attention had been given earlier in the day. So far as appears, there was then no reason to anticipate further trouble, and in fact the signals just preceding the accident had been correctly transmitted. After the elevator had come to rest, no signal was required until the car had been removed, and we think it clear that this unfortunate occurrence was wholly due to the meddling of a fellow servant outside of his duty.

The judgment is affirmed.