NEPHEW v. CONSUMERS POWER CO.

1. Gas—Danger of Escape—Duty of Gas Company.

In view of the dangerous character of gas for domestic use and its tendency to escape, gas company has duty to use a degree of care to prevent injury and damage commensurate with the danger which it has to avoid and it is liable for damage resulting from failure to exercise such degree of care.

2. SAME—OWNERSHIP OF PIPING AND SHUT-OFF VALVE—DUTY OF
GAS COMPANY.

Gas company may not escape liability because piping and shut-
off valve on the premises were paid for by the owner of prem-
ises where plaintiff's decedent lived and died as it is not
thereby excused from its failure to exercise necessary degree
of care to avoid injury and damage commensurate with danger
which it was its duty to avoid.

3. SAME—NEGLIGENCE OF GAS COMPANY EMPLOYEES IN TURNING OFF
GAS.

Regardless of ownership of service pipes and shut-off valve on
private premises, a gas company is liable for negligent man-
ner in which its employees sent to turn off the gas perform
their duty.

4. SAME—NEGLIGENCE IN SHUTTING OFF GAS—EVIDENCE.

Although the failure of a gas company to shut off gas at the
street is not negligence in and of itself, such failure may be
considered by jury as bearing upon the exercise of due care by
the gas company.

5. SAME—NEGLIGENCE—EVIDENCE—DEATH ACT.

In action under death act for asphyxiation of plaintiff's de-
cedent, occupant of a house to which defendant gas company's
employee had been called to turn off the gas, evidence tend-
ing to show he was negligent in shutting off and sealing the
shut-off valve under the house *held,* sufficient to present ques-
tion of negligence for jury (3 Comp. Laws 1929, §§ 14061,
14062).

Appeal from Oakland; Doty (Frank L.), J. Sub-
mitted October 15, 1937. (Docket No. 135, Calendar
No. 39,599.) Decided December 29, 1937. Rehear-
ing denied February 25, 1938.

Case by Gladys Nephew, administratrix of the
estate of Orrin Nephew, deceased, against Con-
sumers Power Company, a Maine corporation, for
damages sustained when plaintiff's decedent was
killed by escaping gas. Verdict and judgment for
plaintiff. Defendant appeals. Affirmed.

*Dennis H. Dwyer, William J. Donovan* and *Earl Nash,* for plaintiff.

*Glenn C. Gillespie,* for defendant.

POTTER, J.   Plaintiff, adminstratrix of the estate of deceased, brought suit against defendant to recover damages under the death act,* for the death of decedent, February 10, 1934.   It was plaintiff's claim decedent was asphyxiated by gas which escaped and filled the apartment where he lived, because of the negligence of the defendant in installing defective gas service equipment, not properly inspecting it after installation and not shutting off the gas at the street when service to the apartment was discontinued.   Defendant contended the equipment was proper and purchased from a reputable manufacturer; it made monthly inspection of the premises; the death of decedent was due to the forcible damaging, by some unknown person, of the shut-off valve; and the failure of defendant to shut off the gas at the street was not the proximate cause of decedent's death.   Plaintiff had verdict and judgment, motions for judgment notwithstanding the verdict and for a new trial were made by defendant and denied, and defendant appeals.

After the installation of the shut-off valve, claimed to have leaked, as the property of the landowner it continued to be used for some time.   At the time of the death of decedent, it had been installed about four years and had been shut off for a period of more than two years.   No complaint had ever been made to defendant as to leaking gas.   Parties who visited decedent's apartment the night before his death did not detect the odor of gas.   This shut-off valve was not accessible from inside the house, but

---

* See 3 Comp. Laws 1929, §§ 14061, 14062.—REPORTER.

was accessible from outside the house through a small door. After the death of decedent, the valve under the house was found to be open and leaking gas, which gas could pass upward, through the floor, into the apartment occupied by decedent.

There was testimony internal corrosion of the valve might take place after a period of four years; the valve had been screwed up and pounded and the thread broken, that it was not tightened up and reset when shut off, and, if it had been properly tightened up and reset when shut off, there would have been no play in the valve and no chance for gas to escape therefrom; if the valve was reset in the condition in which it was found, it would have been improper; when the nut was screwed down on the valve to shut it, it was punched with two punch marks so as to push the metal against the thread and effectively lock the valve; but it did not appear that after it had been shut off the last time it had been punched. There were no other gas jets or stoves in the house occupied by decedent. Defendant failed to produce the man or men who shut off the gas from this apartment in September, 1931. There was testimony that weather conditions and moisture tended to contract and expand the valve; that it was the custom, in turning off the gas, with such a valve, to back the nut off with a wrench; that this had been done and it had been reset and resealed, but was screwed up and pounded with a hammer, the thread broken and the cylinder loosened; that it was never tightened up and reset in a proper manner, and, if it had been, there would have been no play in the valve and no leaking. The valve itself showed it had never been reset, or set twice, according to the punch marks on the valve head—that if it had been, there would have been four sealing or punch marks, rather than two. There was no proof defendant's inspectors in-

spected the valve in question after it was shut off in September, 1931.

A meter reader of defendant testified he read the meters, notwithstanding the gas was shut off, but did not remember inspecting the valve in question; but if he had inspected it, he would only have looked at it to see whether or not the seal had been tampered with. On cross-examination, he admitted he never made an inspection of the valve in question and it might have been loose a quarter of an inch for all he knew.

It was suggested by appellant the valve had been damaged so that gas could escape; that the controlling question was, Who damaged the valve so the gas could escape? It was suggested it might have been done by persons attempting to steal gas, or by mischievous or inquisitive children.

There was apparently no escaping gas the night before decedent's death. The valve was not accessible from the inside of the house. It could be reached only from the outside of the house. The sergeant of police of Ferndale was called and opened the door by which the valve was reached. He said the floor of the house was about two feet from the ground; at the corner was a door leading under it about two feet high which opened on the outside; this door was opened when he started his investigation, and he could hear the escaping gas hissing from the valve before the door was opened; there was about an inch of dirt and snow and leaves at the bottom of the door, which they scraped away and they used quite a bit of pressure to open the door because the bottom of it was frozen; and it looked to him as though the door had not been opened for quite awhile and had been frozen for some time previous to the time they opened it. While he would not say the door had not been opened for 17 days

prior to the death of decedent, he did say it looked as though it had not been opened for considerable time. This officer testified, when he discovered the gas leaking from the valve, he called the gas company and their employees arrived in about 20 minutes; the employee of defendant put a wrench on the valve, and said "I don't have to use a wrench on it" and turned it with his fingers, and then turned the gas off in the street.

In view of the dangerous character of gas such as that sold by defendant, and its tendency to escape, it was the duty of defendant to use a degree of care to prevent injury and damage commensurate with the danger which it was its duty to avoid. *Fleegar v. Consumers Power Co.*, 262 Mich. 537; 28 C. J. p. 591. If it failed to exercise this degree of care, and injury and damage resulted by reason of such failure, it is liable. 12 R. C. L. p. 905.

Defendant may not escape liability because the piping and shut-off valve on the premises were paid for by the owner of the property where decedent lived and died. This does not excuse defendant from its failure to exercise the degree of care to avoid injury and damage above stated. Defendant cannot avoid liability because it did not own the pipes and shut-off valve on the premises where they were installed. *Washington Gas Light Co.* v. *District of Columbia*, 161 U. S. 316 (16 Sup. Ct. 564). Regardless of the ownership of the service pipes and shut-off valve on private premises, a gas company is liable for the negligent manner in which its employees sent to turn off the gas perform their duty. *Lanigan* v. *New York Gas-Light Co.*, 71 N. Y. 29; *Haas* v. *St. Paul Gaslight Co.*, 113 Minn. 379 (129 N. W. 759); *Louisville Gas Co.* v. *Gutenkuntz*, 82 Ky. 432; *Chisholm* v. *Atlanta Gas-Light Co.*, 57 Ga. 28; 28 C. J. p. 595.

The failure of the gas company to shut the gas off at the street is not negligence in and of itself; but the authorities, generally, hold such failure may be considered by the jury as bearing upon the exercise of due care by the gas company. *Chisholm* v. *Atlanta Gas-Light Co., supra; Canfield* v. *West Virginia Central Gas Co.,* 80 W. Va. 731 (93 S. E. 815, L. R. A. 1918 A, 808). If the death of plaintiff's decedent had been caused solely by the negligence of defendant in failing to shut the gas off at the street valve, it would be liable. *Lanigan* v. *New York Gas-Light Co., supra.* But the testimony indicates, if defendant is liable, it is not because of its negligent failure to close the valve at the street, but because of the negligent failure of its employee properly to close and seal the shut-off valve under' the house.

There was sufficient testimony tending to show the negligence of defendant's employee in not properly shutting off and sealing the shut-off valve under the house to carry the case to the jury. There was no direct and positive testimony of what defendant's employee did. The employee who shut off the gas under the house in which decedent lived and died was not produced by defendant. There was testimony of facts and circumstances from which the jury might draw a legitimate inference that defendant's employee negligently failed to close and seal properly the valve when the gas was turned off. We find no reversible error.

Judgment affirmed, with costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and CHANDLER, JJ., concurred.