POSTAL TELEGRAPH-CABLE CO. *v.* BATTLE CREEK GAS CO.

1. NEGLIGENCE—SUBTERRANEAN TELEGRAPH CABLES—GAS COMPANY REPAIRS TO SERVICE PIPES.

   In telegraph company's action against gas company for injuries to subterranean cable because of negligent use of tunneling spoon in proceeding with digging and repairs of lateral connections to gas mains, evidence *held*, sufficient to sustain trial court's finding for plaintiff on issue of proximate cause.

2. SAME—RES IPSA LOQUITUR—NORMAL WEIGHT OF PROBABILITY AND CIRCUMSTANCE.

   Notwithstanding fact that negligence may not be found from the mere occurrence of an accident, full effect must be given to the normal weight of probability and circumstance.

3. SAME—RES IPSA LOQUITUR—EXCLUSION OF OTHER POSSIBLE EXPLANATIONS.

   It is not an application of the doctrine of *res ipsa loquitur* to find negligence from a condition which is shown to have existed and which could have caused the damage, and all other possible explanations are excluded.

4. SAME—SUBTERRANEAN TELEGRAPH CABLES—GAS SERVICE PIPES—EVIDENCE.

   In action by telegraph company against gas company for injuries to subterranean cable, which became manifest several weeks after inexperienced employees of defendant had dug a nearby tunnel and trench for lateral connections to gas mains in midwinter, it is not to be expected that testimony of eyewitnesses will be presented nor will the evidential assumption that the wires must have failed at the moment they were injured or severed be indulged, as the fact that the effects of negligence in subterranean operations do not become manifest until days after the act does not avoid liability, especially where such assumption is based upon the testimony of a single witness whom the trial judge felt was mistaken.

5. SAME—INJURY TO SUBTERRANEAN CABLES—PROXIMATE CAUSE—EVIDENCE.

Finding of trial court that damage to plaintiff telegraph company's subterranean cable was due to negligence of defendant gas company's employees in their use of picks and tunneling devices some weeks previous to interruption of service on the cable *held,* not against the weight of the evidence.

SHARPE, POTTER, and CHANDLER, JJ., dissenting in part.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted June 15, 1939. (Docket No. 114, Calendar No. 40,620.) Decided October 20, 1939. Rehearing denied December 20, 1939.

Case by Postal Telegraph Cable Company, a Michigan corporation, against Battle Creek Gas Company, a Michigan corporation, for damages sustained when defendant's agents negligently injured plaintiff's cable. Judgment for plaintiff. Defendant appeals. Affirmed.

*Schmalzriedt, Frye, Granse & Frye (Frank H. Pearce,* of counsel), for plaintiff.

*Joseph W. McAuliffe,* for defendant.

SHARPE, J. (*dissenting in part*). This is an action brought by Postal Telegraph-Cable Company against the Battle Creek Gas Company for recovery of damages for injury done to its cable as well as for the loss of the use of said lines during the period of repair. The cause was tried without a jury and the trial court granted plaintiff damages in the sum of $1,074 for labor and material in repairing the cable and the further sum of $1,682.66 for rental value or loss of use of lines. Defendant appeals.

Plaintiff is a Michigan corporation authorized and engaged in the operation of telegraph and cable service in the State of Michigan and elsewhere. De-

fendant company is also a Michigan corporation authorized and engaged in the business of supplying gas to its patrons within the city of Battle Creek.

In the months of January, February, and March of 1934 and prior thereto, plaintiff in the conduct of its business leased cable space in a conduit on East Michigan avenue in the city of Battle Creek. The conduit was located on the north side of East Michigan avenue about 45 inches from the curb and about two feet under the surface. The conduit consisted of two fiber ducts inclosed in concrete about three inches thick. At the time above mentioned, the defendant company maintained a service main and laterals running therefrom to its patrons on East Michigan avenue. Its service main was located on the south side of said street.

In the fall of 1933, the city of Battle Creek excavated a trench in the center of the street to lay a storm sewer pipe preparatory to repaving the street. When the street was opened it was found that some of the laterals of the gas company running from their service main to the homes of customers living on the north side of the street had been damaged by rust and corrosion; and it became necessary not only to replace some of the laterals, but also to raise others due to the location of the sewer in the middle of the street. In removing and replacing these laterals it became necessary for defendant company to carry on certain underground operations by means of tunneling. This work was done in the month of January, 1934.

On February 7, 1934, four of the wires in the cable of plaintiff company failed to render proper service and the line was repaired by transferring the wires. On March 5, 1934, all of the lines in the cable failed and went out of commission. Upon examination it was found that the trouble was in the cable between

manholes Nos. 19 and 21, between Irving and Elm streets on East Michigan avenue. Investigation showed that the concrete envelope inclosing the cable had been damaged and broken in three places, and that the cable had been pierced in three places by some sharp instrument. A crew of men restored service on the evening of March 6, 1934, and later installed a new cable.

It is the claim of plaintiff that defendant did not follow the usual and approved method of digging test holes to locate the conduit, but proceeded by means of a tunneling spoon from the center of the street to the north curb; that in so doing they broke and damaged the concrete envelope inclosing the conduit which contained the wires; and that the broken conduit admitted moisture into the cable which in time caused the lines to fail.

It is the claim of defendant company that plaintiff has failed to sustain the burden of proof of showing that defendant and not some other agency injured plaintiff's cable; that plaintiff's cable injuries occurred in three separate locations; that a piece of cable taken from a point 6 feet west of manhole No. 21 near Irving street shows that three wires were cut and a fourth was touching the armor causing a ground; that four lines of this cable failed on February 7, 1934, but were not removed until March 6, 1934; that from the damage shown to have been done to this cable, it failed to function the exact instant it was cut; that on February 7, 1934, defendant company had no men working in that vicinity; that they had completed their lateral replacements January 16, 1934, and did not return to install the drop and drip lines until February 11, 1934, four days after the line failed; that a piece of cable taken from the underground conduit at a point 237 feet west of

manhole No. 20, which is approximately equidistant between Irving and Elm streets, shows that all of the wires were cut and frayed and a number of holes punched in the armor of the cable and, from the damage done, the service would have failed immediately; that the damage done to this cable was approximately 160 feet west of the nearest point where defendant's employees worked; that a piece of cable taken from the conduit 78 feet west of manhole No. 20 above referred to and in front of the colored Baptist church was at a point where defendant company's employees repaired and replaced some laterals, but the injuries appearing on the cable were punched by a sharp pointed instrument and could not have been made by a tunneling spoon; and that all damages could have been done by other agencies such as the Civil Works Administration, the city, or private plumbers who were employed in making lateral sewer connection at the time.

The trial court found as a fact that no other agencies except defendant company did any work north of the center of the pavement prior to the failure of plaintiff's lines; that the injuries to the cable were made by a sharp instrument such as the tunneling spoon used by defendant's employees in its operation in removing, replacing and elevating their laterals; that the damage was occasioned by some direct force applied to the conduit and cable in question; that in three instances the tunneling extended clear through to the curb, in one case to replace a service and in the other two to raise the laterals; that in doing so they struck a hard surface and removed large pieces of cement.

In our discussion of the issue involved in this case we have in mind that the rule of *res ipsa loquitur* is not followed in Michigan.

In *Fish* v. *Railway*, 275 Mich. 718, we said:

"The mere occurrence of an accident does not raise a presumption of negligence and the burden of proof remains with plaintiff and does not shift."

In the instant case the burden was upon plaintiff to establish the fact that the damage was occasioned by the negligence of defendant. We recognize the rule that in cases tried by the trial judge sitting as a trier of the facts we will not substitute our judgment on questions of fact unless the evidence clearly preponderates in the opposite direction. See *Leonard* v. *Hey*, 269 Mich. 491 (37 N. C. C. A. 111).

The facts show that the cable near Irving street was damaged by having three wires cut and one touching the armor. From the nature of the damage the service must have ceased instantly, but the cable was not examined until March 5, 1934. The trial court assumes that because defendant company was the only known agency doing any work on the north side of the street, it must have caused the damage. In our opinion there is no competent testimony to show that defendant company caused the damage at this point.

The evidence shows that the damage done to the cable at a point 237 feet west of manhole No. 20 is as follows: All the wires were cut and frayed and a number of holes punched in the armor of the cable. At this point service must have ceased immediately upon the cutting of the wires. The record shows that these wires were removed March 6, 1934; we find no competent testimony showing that defendant company did any work in that particular vicinity at the time service was interrupted.

In our opinion a question of fact is raised as to whether defendant company caused the damage to plaintiff's cable in the vicinity of the colored Baptist church. It is admitted that defendant company

did some tunneling in this vicinity in repairing and removing some laterals. The trial court found that the tunneling spoon could have caused the damage shown.

In *Fish* v. *Railway, supra,* we said:

"We have held that negligence may be inferred from circumstances and that where the circumstances are such as to take the case out of the realm of conjecture and place it within the field of legitimate inferences from established facts, at least a *prima facie* case is made."

We think the above rule applies to facts pertaining to the third point of damage and concur in the finding of the trial court that defendant company caused the damage at this point.

In view of the fact that the amount of damages allowed by the trial court is based upon injury to the cable at three places and defendant company being liable only for damages at one of these points, it follows that the amount of damages is excessive.

The judgment should be reversed and the cause remanded for the purpose of determining the amount of damages suffered by plaintiff company to its cable at the point above mentioned. Defendant should recover costs.

POTTER and CHANDLER, JJ., concurred with SHARPE, J.

BUTZEL, C. J. I am not in accord with the foregoing opinion except in its holding that defendant is responsible for the damage done to plaintiff's cable at a point near the Baptist church, 78 feet west of manhole 20. The evidence overwhelmingly sustains that conclusion. As to the other alleged injuries to the cables, I think sufficient proofs were presented to justify the findings of the trial judge.

From the somewhat unclear description in the record, plaintiff's cable connections appear to have been made up of a number of individual wire strands, surrounded by lead sheathing. These were placed in a waterproof fiber conduit having an inside diameter of three inches. The entire conduit in turn was surrounded by a concrete envelope of a thickness of three inches on the sides and bottom, and four inches across the top. The cables were buried at various depths and at various proximity to the gas mains of defendant company.

1. *Damage to cable six feet west of manhole 21:* At this point a test hole was dug when the cable failed for the second time, and a piece thereof was removed. This was introduced into evidence. It reveals a break in the outer sheathing, a break of three inside wires, and contact between another wire and the armor, which caused a ground in the electric circuit. The sheath was broken approximately 2½ inches from the surface; it was crushed and cut. The wire first failed on February 7, 1934, but the trouble was discovered and the strands were switched, thus preserving the connection. On March 5, 1934, however, the wires failed completely.

The cable lay two feet below the level of the street, a position in which it would ordinarily be unaffected to any marked extent by pressures from the surface. There was considerable testimony that the abrasions noticed in the exhibit were such as would have been caused by a sharp instrument piercing the concrete and the frail fiber duct. Natural forces, such as rust, frost and deterioration, do not produce effects like those presented in the court below. Nor does vandalism or roguery usually indulge itself 24 inches under ground. The inference is compelling that the wires were negligently injured by some human agency operating in the vicinity. According to

plaintiff's proofs, the defendant was the only utility having occasion at the time to undertake work in the vicinity, and was the only utility which had done such work for a reasonable period prior to the failure of the wires. Defendant had been working with men who were not experienced in the installation and repair of gas mains and conduits. Admittedly, they had worked to install gas mains on January 16, 1934, less than three weeks prior to February 7, 1934. It was further shown that defendant caused a trench to be dug to install a so-called drop or drip line at about the same level as plaintiff's cable and along the same street. Defendant's employees testified, however, that this work was completed on a Sunday, February 11, 1934, which was four days after the first failure of the wires.

While our consistent refusal to find negligence from the mere occurrence of an accident should not be relaxed, we are bound to give full effect to the normal weight of probability and circumstance. For subterranean occurrences of the kind here involved we cannot expect nor demand the testimony of eye-witnesses. As we held in *Oleksza* v. *Nolan,* 258 Mich. 240, where plaintiff claimed the negligent installation of a sewer was responsible for subsequent sinking of his house:

"It is not an application of the doctrine of *res ipsa loquitur* to find negligence from a condition which is shown to have existed and which could have caused the damage, and all other possible explanations are excluded."

The coincidence of the trench dug by defendant and its other work with the location of plaintiff's cable at this point was competently established. The remaining question is simply one of temporal coincidence.

Defendant urges that its installation of lateral mains was completed on January 16th, that the trench was not dug until February 11th, and therefore it could not have been responsible for the failure of the wires on February 7th. In the first place, it should be noted that even this argument does not explain away the subsequent failure of the wires on March 5th. More importantly, this theory is based upon the hypothesis that the wires must have failed at the moment they were injured or severed. Without conclusive supporting proofs, I cannot accept such an evidential assumption. Although there is no occasion to discuss these possibilities, it is probable that the end points of the wire strands inclosed in a fiber conduit in frozen ground two feet below the surface could remain in physical contact with each other although they had been severed. A change in temperature, or tension elsewhere on the wire, would then be sufficient to cause the contact to be broken. That the effects of negligence do not become manifest until days after the act does not avoid liability. See *Nephew* v. *Consumers Power Co.*, 283 Mich. 12, where facts and circumstances were held to support the legitimate conclusion of a jury that defendant's employee had failed to close a shut-off gas valve more than two and a half years before it resulted in the asphyxiation of plaintiff's decedent. Finally, defendant's contention is supported simply by the statement of one employee that the trench was dug on a Sunday, four days after the initial failure of the cable. Although there was no positive contradiction of this testimony in terms, in the light of all the other persuasive circumstances establishing defendant's activities at this and other points where plaintiff's cables lay, it is clear that the trial court felt that defendant's witness was mistaken. The judge was better able to weigh his cred-

ibility·than are we, and particularly, since defend-
ant's superintendent admitted that other of its rec-
ords "get balled up" at times, his evaluation of the
total testimony should not be disturbed.

2. *Damage to cable 237 feet west of manhole 21*:
The evidence is even stronger that defendant was
responsible for the damage at this point. On
March 5, 1934, "swinging trouble" in plaintiff's
lines was reported to its foreman. This condition
was caused by water entering the cable and circulat-
ing from one to another line. In the afternoon of
the same day the wires had "gone out wet," or be-
came grounded because of seepage. Repairmen
finally located the trouble at this point and discov-
ered that the waterproof fiber conduit had been
punctured in several places by a sharp instrument,
thereby admitting moisture to the wires themselves.
Defendant had previously done work in this vicinity
which required the use of picks and tunneling de-
vices.

Defendant again disclaims activity in the neigh-
borhood at the moment of the failure of the wires.
Obviously, to cause damage to the waterproof pro-
tection of the cable which would become manifest
only when water had seeped through the perfora-
tions, it was not necessary that the injury be inflicted
the same day that the wires failed. The testimony
was conflicting as to whether the connection here
was completely severed, but the preponderance
thereof indicates that excess moisture was the cause
of the failure. I cannot say that the trial judge
ignored the weight of the evidence in attributing the
resulting damage to the prior proximate negligence
of defendant.

It is peculiarly significant that wherever plain-
tiff's cables were damaged, the lateral mains of the
gas company were located at the same point. While

defendant's witness denied that in the process of tunneling they had struck any of plaintiff's conduits, they admitted that chunks of concrete had been removed by them. There was also abundant testimony which indicated that some of defendant's workers did not even know that the telegraph cables were located in the street, although this information was readily available, while those who did know that plaintiff's cables were close to the gas mains still failed to exercise due care in ascertaining the exact location before proceeding with digging and repairs. All of these facts are carefully and effectively reviewed in the 37-page opinion filed by the trial judge. I am not persuaded that his determination either as to liability or as to the measure of damages should be upset.

Affirmed, with costs to plaintiff.

Wiest, Bushnell, North, and McAllister, JJ., concurred with Butzel, C. J.