Shaw and others, Appellants, vs. Wisconsin Power & Light Company, Respondent.*

*November 30—December 30, 1949.*

* Motion for rehearing denied, with $25 costs, on March 7, 1950.

*J. E. O'Brien* of Fond du Lac, for the appellants.

For the respondent there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and *John P. McGalloway* of Fond du Lac, and oral argument by *Mr. R. J. Sutherland* and *Mr. McGalloway.*

FAIRCHILD, J. The only question, which it is necessary to consider, is whether the defendant was negligent in not turning the gas off at the street and in allowing it to stand in the pipes on deceaseds' premises.

The rule which applies to situations such as this has been discussed in opinions of courts and in texts. It has been held that failure of a gas company on discontinuance of the use of its gas by a householder or patron to cut off the gas at the street so as to keep it from the service pipe does not constitute negligence *per se*. There may be circumstances imposing a duty to inspect because a gas company is expected to take every reasonable precaution suggested by experience and usual practice. It must install pipes and fittings of good material and workmanship with skill and care and must inspect its pipes and promptly repair them when they become unsound. See 24 Am. Jur., Gas Companies, p. 680, secs. 20 to 50, which treats with duties and liabilities of gas companies. Also 38 C. J. S., Gas, p. 738, sec. 42, which deals with negligence in turning gas on or off, and *Canfield v. Gas*

*Co.* (1917), 80 W. Va. 731, 93 S. E. 815; Anno. L. R. A. 1918A, 808.

The trial court found, and his finding is supported by the evidence, that the pipe in which the break occurred was not defective and that the break was caused by the settling of the house due to a rotten post. Therefore, inspection, maintenance, or repair of the pipes by the defendant would not have prevented the accident.

While defendant can be held to a duty to keep the pipe in which its gas is stored in good condition, it cannot be required to make an inspection of the premises to determine whether they are being kept in safe condition without any knowledge that they may be a source of danger. There was no odor of gas prior to the death of the occupants of the house; there was no sign that the house was sagging and exerting pressure on the gas pipes under it. In fact, as pointed out by the trial court, there was no proof that an inspection even a day or two before the break would have disclosed the likelihood of pressure on the pipes from a sagging of the house. Because of such circumstances defendant was under no duty to inspect the premises to discover a possible dangerous condition. The rule has been stated as follows:

"It is of the essence of negligence that the person charged should have knowledge that there was a duty for him to perform; knowledge of the facts out of which the duty to act arises is essential; in order that an act or omission may be regarded as negligent, the person charged must have knowledge or ought to have known from the circumstances that the act or omission charged involved danger to another." *Moen v. Madison Railways Co.* (1929), 199 Wis. 168, 170, 225 N. W. 821.

Any other rule would necessitate the examination at frequent intervals of all buildings in which gas is used. It would be a practical impossibility.

The plaintiffs cannot recover the damages they seek because there is no evidence that the defendant failed to perform any duty imposed on it by law.

*By the Court.*—Judgments affirmed.

BROADFOOT, J. (*dissenting*). While gas service was being furnished to the premises at 300 West Division street in the city of Fond du Lac, the defendant and its employees knew the condition of the premises. It learned that the dwelling thereon did not rest upon ordinary foundations but was supported by wooden posts; that there was no basement under the building; that it was located within a flooded area of the city, and that the service pipes were directly below the floor joists, and it should have realized that frost might heave the pipes or flooding might cause the house to settle in such a manner as to break the pipes and permit a gas leak.

All of the authorities recognize that gas is a dangerous substance, and if it is permitted to leak in or about a dwelling it will inevitably lead to asphyxiation or damage by an explosion. It is my opinion that the defendant, having elected to store its gas in the service pipes under this dwelling rather than to shut it off at the curb line or to disconnect it at the main, assumed the duty of inspecting the same at sufficient intervals to see that damages were not done to other people. The authorities amply support this view.

"A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life and business, which involve little or no risk of injury to persons or property. Therefore, in view of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care to prevent damage commensurate to the danger which it is its duty to avoid, even though this degree of care may extend the requirement in that behalf slightly beyond the general rule with respect to the exercise of ordinary care to avoid such dangers only as are reasonably to be anticipated in the conduct of a particular business." 38 C. J. S., Gas, p. 732, sec. 42.

"It has been held that failure of a gas company, on discontinuance of the use of its gas by a patron, to cut it off at the street valve, so as to exclude it from the service pipe, and cutting it off at the meter valve, so as to leave it stored in the service pipe up to the meter valve, do not constitute negligence *per se*. Since the gas, in such case, belongs to the gas company, however, the law imposes on it the duty to exercise care in the storing thereof, to the end that injury may not result, and it is bound to inspect, maintain, and repair the service pipe as long as it is so used." 38 C. J. S., Gas, p. 738, sec. 42.

A case very similar to the one in question is *Castner v. Tacoma Gas & Fuel Co.* (1923), 123 Wash. 236, 212 Pac. 283, 126 Wash. 657, 219 Pac. 12. In that case a dwelling house was demolished by an explosion on January 27, 1921. Gas was installed in the house in 1911. Gas service was discontinued there in May, 1913, at which time the meter was removed. Gas was not ordered or used by the occupants of the house thereafter. In that case the service pipe extended under ground from the main in the street and was brought to the surface of the ground under the house. The meter bar to which the meter was attached was installed under this corner of the property. When the meter was removed the gas was shut off ahead of the meter standard and not at the curb. In that case the court quoted with approval the rule laid down in *Koelsch v. Philadelphia Co.* (1893), 152 Pa. 355, 362, 25 Atl. 522, where it said:

"While no absolute standard of duty in dealing with such agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. This would require in the case of a gas company not only that its pipes and fittings should be of such material and workmanship, and laid in the ground with such skill and care, as to provide against the escape of gas therefrom when new, but that such system of inspection should be maintained as would insure reasonable promptness in the detection of . . . leaks

that might occur from the deterioration of the material of the pipes, or from any other cause within the circumspection of men of ordinary skill in the business."

In that case it was further stated (*Castner v. Tacoma Gas & Fuel Co., supra,* p. 241):

" 'A gas company is bound to inspect for discovery of leaks due to defects in materials, deterioration of pipes and valves, displacement or dislocation by accident, the weather, and the like, because it knows these things often occur.' "

In the *Castner Case,* the gas company had made no inspection of the pipe after the removal of the meter in 1913. There was a dispute in the evidence as to the ownership and control of the service pipe, but the court held that to be immaterial as the gas company was using the pipe at the time of the accident as a storage place for its product.

In the case of *Nephew v. Consumers Power Co.* (1937), 283 Mich. 12, 17, 276 N. W. 881, it was stated:

"In view of the dangerous character of gas such as that sold by defendant, and its tendency to escape, it was the duty of defendant to use a degree of care to prevent injury and damage commensurate with the danger which it was its duty to avoid. *Fleegar v. Consumers Power Co.* 262 Mich. 537, 247 N. W. 741; 28 C. J. p. 591. If it failed to exercise this degree of care, and injury and damage resulted by reason of such failure, it is liable. 12 R. C. L. p. 905.

"Defendant may not escape liability because the piping and shutoff valve on the premises were paid for by the owner of the property where decedent lived and died. This does not excuse defendant from its failure to exercise the degree of care to avoid injury and damage above stated. Defendant cannot avoid liability because it did not own the pipes and shutoff valve on the premises where they were installed. *Washington Gaslight Co. v. District of Columbia,* 161 U. S. 316, 16 Sup. Ct. 564, 40 L. Ed. 712."

The duty of a gas company under the circumstances here has not been determined in Wisconsin. Because of the

growing population and the increase in the use of gas it would be well to adopt the rule cited by the above authorities, and require the gas company, when service is discontinued, to shut the gas off at the main or at the curb, or to assume the duty of inspecting the service pipes at sufficient intervals to assure that no damage will result from a gas leak. The company should not be required to cut off the gas at the main or curb in the case of a temporary discontinuance of service, but when it becomes apparent, as it did in this case, that gas would not be used upon the premises for a period of several years, it should meet its responsibility to the public. The added responsibility on the part of the gas company is slight, and it can reasonably be required to take steps that will save lives and property.

I am authorized to state that Mr. Justice HUGHES and Mr. Justice MARTIN concur in this dissent.